IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE L. KLIPFEL and MICHAEL V. CASALI, | ) ) ) | |
| Plaintiffs, | ) ) | No.    94 C 6415 |
| v. | ) ) | Judge MANNING |
| ROBERT RUBIN, et al., | ) ) | Magistrate Judge Mason |
| Defendants. | ) ) | |

**DEFENDANT CITY OF CHICAGO'S TRIAL BRIEF**

**I.    NATURE OF THE CASE**

Plaintiffs have brought a claim under 42 U.S.C. § 1983 against the City of Chicago, alleging that it caused Joseph Miedzianowski, a former Chicago Police officer who is currently in a federal penitentiary, to violate their First Amendment right by threatening them and making false statements against them in retaliation for their disclosure of his criminal activities. Plaintiffs allege that the City caused Miedzianowski's conduct by failing to adequately investigate and discipline him for his alleged misconduct in this case.

The § 1983 claim is the only claim brought by Plaintiffs against the City.  The City, however, has brought a counterclaim asking for a declaratory judgment that Miedzianowski's conduct in retaliating against Plaintiffs for their disclosure of his criminal activities was not in any degree committed to serve the City's interests, and thus that the City may not be required under 745 ILCS 10/9-102 to pay any judgment that may be entered against Miedzianowski.

**II.    FACTS DEFENDANTS EXPECT THE EVIDENCE WILL ESTABLISH**

Plaintiff Diane Klipfel, a special agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF") since 1976, was promoted to a group supervisor position in Chicago on February 28, 1990.   She initiated the creation of a Latin gang task force which enlisted Chicago

Police officers in March 1990. In 1992 and 1993, which was the relevant time period for this case, plaintiffs Diane Klipfel and Michael Casali were agents of ATF.

During this same period, Chicago Police Officer Miedzianowski was detailed to work with ATF. On February 20, 1992, Plaintiff Diane Klipfel executed a search warrant on the residence of Darrin Pippin with the assistance of Miedzianowski and other Chicago Police officers. Darrin Pippin informed plaintiff Diane Klipfel that Miedzianowski and another Chicago Police officer stole 51 $100 bills, gold cross necklace, a pinkie ring, two bracelets and a brown leather coat from his residence and car. Darrin Pippin also related to plaintiff Diane Klipfel that he had about $28,000 in cash and a gun in a safety deposit box at Albany Park bank, which Miedzianowski was planning to steal. That night, plaintiff Diane Klipfel confronted Miedzianowski with this allegation and he threatened to report her to her supervisor and to kill her and her family.

On February 21, 1992, plaintiff Diane Klipfel reported to her supervisor that Miedzianowski was a thief and wished him removed from the ATF Latin gang task force. Plaintiff Diane Klipfel had no direct evidence of corruption by Miedzianowski.

On January 26, 1993, Plaintiff Diane Klipfel was interviewed by ATF Internal Affairs Agents Kalkman and Kuphal concerning allegations made by Miedzianowski. Miedzianowski had told an ATF supervisor that plaintiff Diane Klipfel had stolen a necklace during a search warrant. From September 1993 to June 1995, Miedzianowski solicited and coerced informants to give false statements against plaintiff Diane Klipfel. Miedzianowski also looked into plaintiff Diane Klipfel's financial records, conducted surveillance on her home and spread rumors. Miedzianowski also threatened to kill plaintiff Diane Klipfel and her family in an attempt to make her keep silent regarding his criminal activities.

Ray Risley, the head of Chicago Police Internal Affairs, was instructed by Chicago Police Superintendent Rodriguez to initiate a complaint register investigation into the allegations

arising from the search warrant. Mr. Risley obtained information to initiate the complaint from sources within ATF and from press releases. The complaint against Miedzianowski was ultimately not sustained because of a lack of sufficient evidence of criminal conduct by Miedzianowski. Various Chicago Police officers informed ATF of allegations of misconduct made by Miedzianowski and witnesses he brought to IAD. The Chicago Police officers did not vouch for the truth of these allegations.

The City by ordinance forbids officers to violate the law, to use their official position for any personal gain, and to file false reports. Specifically, the City prohibits its employees from engaging in activities that interfere or disrupt a person's First Amendment Conduct. Furthermore, Police Department General Order 93-3 requires that every complaint of misconduct by a police officer be investigated. In conformity with this ordinance, the City does investigate misconduct complaints and does in fact impose discipline when such allegations are finally found to be sustained.

### III. DEFENDANT'S THEORIES OF DEFENSE

#### I. Plaintiffs have failed to prove their *Monell* claim.

Plaintiffs' only cognizable § 1983 claim against the City of Chicago is for a possible violation of Plaintiffs' First Amendment right to free speech. *See Klipfel v. ATF*, et al., 1996 WL 566452, *13-14 (N.D. Ill. Sept. 27, 1996). They allege that the City caused its employees, in particular Joseph Miedzianowski, to retaliate against them for their having disclosed Miedzianowski's criminal conduct. Plaintiffs claim that this retaliation took the form of false statements made both to officials of their employer, ATF, by various members of the Chicago Police Department. They also allege that Miedzianowski retaliated against them by threatening them and their family.

In a *Monell* claim, a plaintiff must first establish that he suffered a constitutional injury. *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994). Then, he must show that the

constitutional deprivation was pursuant to an official policy of the municipality. *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986). Finally, the plaintiff must prove the existence of a direct causal link between the municipal policy and the constitutional injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). It is now hornbook law that a municipality may be held liable under § 1983 only for its own actions, that is, actions in some way authorized by the municipality's final policymaker. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978); *see Palmquist v. Selvik*, 11 F.3d 1332, 1343 (7th Cir. 1997) (the claim against the municipality under § 1983 must meet the "strict constraints [which] limit municipal liability" pursuant to *Monell*.).

There are two ways in which a municipality may be said to have caused a deprivation of constitutional rights. The first of these is where the municipality's policy directs the action - such as where, for example, a city's personnel ordinance allows the firing of low level employees on the basis of their political beliefs. Plaintiffs have not alleged any such direct authorization here, and there is certainly no evidence in the record supporting such a claim. In fact, during the period at issue here (roughly 1992 through 1995), the City was subject to a consent decree, issued in the case of *Alliance to End Repression v. City of Chicago*, 561 F. Supp. 537 (N.D. Ill. 1982), that provided, among other things, that no police officer could "investigate or prosecute a person, solely because of the person's First Amendment conduct, or selectively for political, religious or personal reasons or to disrupt, interfere with or harass any person because of the person's First Amendment conduct." (G.O. 88-17). Furthermore, the decree defined any investigative activity to include the dissemination of information from CPD to other agencies. *Id.* at p. 10.

This decree, while it applied to the City as a whole, had special relevance to (and provisions regarding) members of the Police Department, and the decree was implemented through a Police Department General Order that required members of the Department to follow

its provisions. Thus, far from authorizing retaliation against someone for First Amendment conduct, the City policy forbade it. *Compare Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992) (municipal ordinances banning racial and political discrimination pursuant to an injunction was the city's policy even if a high level police officer had violated the ordinance.).

Nor is there any evidence in the record that would support an argument by Plaintiffs that in fact there was a "custom with the force of law" by which persons who complained about misconduct by police officers were retaliated against. Proof of such a custom requires that it be so widespread that it is reasonable to infer that the City's policymakers (the City Council) knew about it and yet did nothing to stop it. The policy must in any case have been shown to have been adopted by the City's final policymakers, either by formal adoption or by the policymaker's failure to act to change a custom having the force of law. *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 511 (7th Cir. 1993). The City's final policymaker is the Chicago City Council. *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001); *see also Auriemma*, 957 F.2d at 401. There is no evidence of any such widespread occurrence nor that the final policymaker had adopted the "custom."

The second way in which a plaintiff may claim the City caused a violation of the plaintiff's constitutional rights is by a failure to do something, such as train or discipline. The Supreme Court first recognized such a "failure to train" theory in *City of Canton, Ohio v. Harris*, 489 U.S. at 385. In that case, however, the Court held that to avoid a collapse into *respondeat* liability, stringent limits must be imposed. Thus, the Court held that the municipality must be the moving force behind the constitutional violation and exhibit deliberate indifference. *Id.* at 388-89.

Further, on a claim such as Plaintiffs'- based on a failure to train, discipline or otherwise control - the Plaintiffs face the additional hurdle of proving that the City's policymaker made an affirmative choice of policy with the knowledge of, and deliberate indifference to, the likelihood

5

that the chosen program was likely to cause violations of constitutional rights. *City of Canton,* 489 U.S. at 385. And the deficiency in the program must be closely tied to the alleged constitutional violation and have directly caused the violation. *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 411 (1997).

Here, Plaintiffs' policy claim is based on allegations of a custom or practice of failing to supervise, train, discipline and properly investigate defendant Miedzianowski. (Fourth Amended Complaint ¶ 122). Plaintiffs allege "the City of Chicago and its police department engaged in customs and practices designed to protect corrupt police officers, not detect their crimes and successfully prosecute them." (Plaintiffs' Answers to City's First Set of Interrogatories, at p. 13). Although they allege the existence of a "custom or practice" which they claim caused police corruption, Plaintiffs fail to adduce any evidence that shows how this "custom or practice" caused Miedzianowski's misconduct or how it promoted any other misconduct apart from those alleged in this case.

    **A**.    **Plaintiffs have produced no evidence to show that City failed to train or discipline its police officers.**

A municipality may be liable under § 1983 for a failure to train - - and, by extension, to supervise or discipline - - its employees. *See City of Canton*, 489 U.S. 378; *Palmquist*, 111 F.3d at 1343-46. Specifically, a municipality's failure to train may serve as the basis for liability only where that failure amounts to deliberate indifference to the rights of citizens. *City of Canton*, 489 U.S. at 388-89; *Palmquist*, 111 F.3d at 1343-46.

In *City of Canton*, the Court established that deliberate indifference involves an obvious need for more or different training where the inadequacy of training is likely to result in the violation of constitutional rights. *City of Canton*, 489 U.S. at 390; *see also Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 411 (1997). Moreover, before liability can attach, the City must be on notice of the deficiency and have a high degree of

culpability; its practices must be obviously deficient and so likely to result in a constitutional injury that City's policymakers could be reasonably deemed to be deliberately indifferent. *Palmquist*, 111 F.3d at 1346. And finally, the identified deficiency must be closely related to the plaintiff's ultimate injury. *City of Canton*, 489 U.S. at 388; *Palmquist*, 111 F. 3d at 1344.

      A failure to train claim also requires a tight causal connection between the municipal policy and the constitutional deprivation. A municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation. *See City of Canton*, 489 U.S. at 389; *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). The *City of Canton* Court held that "for liability to attach . . . the identified deficiency in a city's training program must be closely related to the ultimate injury." 489 U.S. at 391. A plaintiff must demonstrate that his injury would not have resulted had the officer "been trained under a program that was not deficient in the identified respect." *Id.*

      Finally, there is no support for Plaintiffs' allegation that the City has an official "policy, practice, or custom" of condoning defamatory acts by its police officers by failing to discipline employees who engage in such behavior. Plaintiffs' failure to train and supervise claim is deficient because there is a complete lack of any evidentiary support. An examination of the depositions and documents collected during discovery, in fact, establishes that City had a concrete policy of training and disciplining its employees, and of prohibiting its officers from retaliating for the exercise of one's First Amendment right.

      The evidence shows that the City by ordinance forbids officers to violate the law, to use their official position for any personal gain, and to file false reports. Specifically, the City prohibits its employees from engaging in activities that interfere or disrupt a person's First Amendment Conduct. Furthermore, Police Department General Order 93-3 requires that every complaint of misconduct by a police officer be investigated. In conformity with this ordinance, the City does investigate misconduct complaints and does in fact impose discipline when such

allegations are finally found to be sustained. In fact, in addition to the extensive training Miedzianowski received in the police academy, he continued to receive in-service training. Plaintiffs can hardly be claiming that defendant Miedzianowski did not know that it was wrong to threaten to kill her and her family or to make false allegations against her. *See Roach v. City of Evansville*, 111 F.3d 544, 550 (7th Cir. 1997).

Plaintiffs have adduced no evidence to indicate either that these disciplinary efforts are ineffective or that the City's policymakers are deliberately indifferent to the necessity of disciplining officers. Without such evidence, plaintiff's claim must fail. *Wilson v. City of Chicago*, 6 F.3d 1233, 1240-41 (7th Cir. 1993).

> **B. Plaintiffs' policy claim against City is based on a single incident, and a single incident is insufficient to hold City liable under *Monell*.**

Section 1983 usually requires that plaintiffs plead more than a single unconstitutional incident to state a claim based upon a municipal "custom." *Calusinski v. Kruger*, 24 F.3d 931, 936 (7th Cir. 1994). A single incident cannot establish a "custom with the force of law." *See, e.g., Bryan County*, 520 U.S. at 408-09. Isolated acts committed by non-policymaking officials generally do not amount to a "custom," which "implies a habitual practice or a course of action that characteristically is repeated under like circumstances." *Sims v. Mulcahy*, 902 F.2d 524, 542 (7th Cir. 1990). "[A] single incident of unconstitutional activity is insufficient to establish a municipal policy or custom." *City of Oklahoma City*, 471 U.S. at 823-24.

To support their claim, Plaintiffs assert that the IAD investigation of Miedzianowski in this case violated police departmental policies. (Plaintiffs' answers to defendant City's First Set of Interrogatories, at ¶ 11). This is hardly a basis for a "policy" claim. Nor can a violation of departmental policies stand as proof of a constitutional violation. *Scott v. Edinburgh*, 346 F.3d 752, 760 (7th Cir. 2003). Plaintiffs discuss the numerous deficiencies in the investigation of Miedzianowski, but they do not present any evidence that these deviations were either the norm

or rose to the level of a custom, still less that the City's policymakers were aware of these deviations or approved them. Rather, they rely on this singular example to insinuate (without evidence) that these deviations were approved by supervisors, and erroneously conclude that these supervisors could adopt a City policy. This flawed reasoning is exactly what the Seventh Circuit warned against in *Sims* and *Calusinski*.

Indeed, their contention that the investigation in this case failed to conform to police standards actually corroborates the City's position that its program of investigation and discipline is anything but deliberately indifferent. The commander of IAD, Ray Risley, testified that the Miedzianowski investigation was unusual because of ATF's failure to cooperate with the IAD investigation. The IAD investigators obtained all the information they could, and that information was insufficient to show misconduct by Miedzianowski. That we may assume-on the basis of his later conviction-that Miedzianowski, not Plaintiffs, was the one who was lying and presenting false information does not show that the IAD investigators were even negligent, but only that they were not omniscient. But even if the investigators in this case intentionally skewed their investigation to protect Miedzianowski, there is no evidence to support a claim that their action was in accord with City policy.

Plaintiffs have not produced any evidence that the failure to investigate and discipline was widespread and systematically violated citizens' civil rights. They have also failed to produce any evidence that the inconsistencies that arose in the Miedzianowski investigation were commonplace or anything more than a single isolated act.

### C. **Plaintiff has failed to produce any evidence that an "official policymaker" is implicated and that there is any "official policymaker" culpability**.

A practice of unconstitutional conduct, lacking formal approval, may provide the basis for municipal liability only if Plaintiffs can prove that the policymaking authority both knew of and acquiesced in a pattern of unconstitutional conduct. *McNabola*, 10 F.3d at 511. As the

9

Seventh Circuit expounded, "[a] municipality may only be held liable where it is a moving force behind the injury because some policymaker made a deliberate choice to act or not act in a certain way." *Latuszkin*, 250 F.3d at 505. In Illinois, only the City Council, and not the Superintendent of Police or lower police officials, is empowered to make policy for the Chicago Police Department. *Id.* at 505; *see also Auriemma*, 957 F.2d at 401.

Even if Plaintiffs could enumerate how the City's policymakers were implicated here, they must also prove that those policymakers "made a deliberate choice to act or not act in a certain way." *Latuszkin*, 250 F.3d at 505. Plaintiffs must show that the City had a high degree of culpability; and that its practices were so obviously deficient and so likely to result in a constitutional injury that the City's policymakers could reasonably be deemed to be deliberately indifferent. *Palmquist*, 111 F.3d at 1347. Furthermore, "[d]eliberate or reckless indifference to complaints must be proved in order to establish that an abusive practice has actually been condoned and therefore can be said to have been adopted by those responsible for making municipal policy." *Wilson*, 6 F.3d at 1240. If steps were taken to eliminate the practice, the fact that the steps were not effective would not establish that there was acquiescence and an adoption of the policy. *Id.*

Plaintiffs in this case never even made a complaint to the CPD, rather CPD took it upon itself (in conformity with the ordinances and general orders) to investigate on the basis of a combination of information from ATF supervisor Vince, press reports, and a report from Miedzianowski that he thought he was being "set up." The plaintiff in *Wilson* was unable to show that where the Superintendent of Police took steps to have the complaints investigated, although the investigation ultimately proved unsuccessful, this resolution amounted to deliberate indifference. *Id*. ("Failing to eliminate a practice cannot be equated to approving it."). Additionally, Plaintiffs perpetuate their confusion over the identity of the requisite policymaker under *Monell* by erroneously referring to the Chicago Police Department as the policymaker.

10

Chicago Police officials took steps to have Miedzianowski investigated. The complaints brought against Miedzianowski were all investigated and the City sustained one on excessive force which was ultimately repudiated by the courts. (Miedzianowski's Disciplinary History). Plaintiffs have produced no evidence implicating the requisite degree of culpability. At most, they can merely speculate as to the deliberate choices the City policymakers may have made or the state of mind they may have entertained or even that the City's policymakers were aware of any other complaints against Miedzianowski. Such speculation cannot defeat summary judgment. *Patterson v. Chicago Association for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998).

    **D.    Plaintiffs have failed to demonstrate that there was a causal link between their constitutional injury and the alleged municipal policy.**

Plaintiffs have the burden of proving that their specific injury was directly caused by the alleged policy, rather than by the mere individual actions of a non-policymaking employee. The Seventh Circuit has held that the "causation requirement must be closely guarded." *Palmquist*, 111 F.3d at 1346. A "mere probability" that the alleged policy might cause any employee to inflict any constitutional injury is insufficient; the plaintiff must show that the particular employee implicated in the lawsuit "was highly likely to inflict the particular injury suffered by the plaintiff," and the injury must have been the "plainly obvious consequence" of the alleged policy. *Bryan County*, 502 U.S. at 412. Thus, the connection between the alleged policy and Plaintiffs' specific constitutional injury must be directly linked. *Id.*

Here, Plaintiffs have adduced no evidence that their alleged constitutional deprivation was directly attributable to the alleged municipal policy. Defendant Miedzianowski had no known prior C.R.s involving retaliation or defamation. In order to succeed on their "policy" claim against the City, they must demonstrate a direct causal connection between the alleged failure to investigate and discipline and their constitutional injury. They have adduced no

evidence to show that the alleged municipal policy was the "moving force" behind their injury and thus, Plaintiffs cannot defeat summary judgment.

## II. Defamation is an act outside the scope of defendant Miedzianowski's employment.

Plaintiffs strive to hold City liable for the alleged defamatory acts committed by Miedzianowski in retaliation for their disclosure of his criminal misconduct. Since Plaintiffs are unable to demonstrate the viability of their *Monell* claim as shown above, their only avenue for holding the City liable is if Miedzianowski's defamation was an act in the scope of his employment. While it might appear that this claim is premature where no judgment has been entered against the employee, it has been held to be appropriate to bring this claim prior to judgment. *Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997).

The issue of scope of employment, for purposes of indemnification liability under 10/9-102 is obviously one of state law. In determining issues of state law, a federal court is "but a surrogate state court." *See Holtz v. J.J.B Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 750 (7th Cir. 1999).

Under the law of Illinois, an act to be within the scope of employment must not only be performed within the authorized time and space limits of employment, it must also be done at least in part to serve the employer's interest. In *Pyne v. Witmer*, 129 Ill.2d 351 (1989), the court stated that while no precise definition of scope of employment had been made, broad criteria had been adopted. The court then listed criteria from the Restatement (Second) of Agency § 228 (1958):

> (1) Conduct of a servant is within the scope of employment if, but only if:
>     (a) it is of the kind he is employed to perform;
>     (b) it occurs substantially within the authorized time and space limits;
>     © it is actuated, at least in part, by a purpose to serve the master * * *
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."

*Pyne*, 129 Ill.2d at 351.

Interpreting this section of the Restatement as adopted by the Illinois Supreme Court, the court in *Williams v. Hall*, 288 Ill. App. 3d 917 (1st Dist. 1997) observed: "An employer is not liable for the criminal acts of its employees if the act is not committed in furtherance of the employer's business, but rather in furtherance of the employee's purposes." *Williams* at 919.

*Wright v. City of Danville*, 174 Ill.2d 391 (1996), is the Illinois Supreme Court's most recent pronouncement on the issue. In that case, former commissioners and the corporation counsel of the city of Danville sought indemnification for criminal defense expenses under an ordinance providing for payment of such expenses incurred in defending acts taken in the scope of employment. The acts at issue were the settlement of a Voting Rights Act case on behalf of the City on terms that included future employment for the commissioners.

The court held that, although they had the authority to enter into the settlement, the criminal act of official misconduct was outside the scope of their employment. Rather, the court held, "[w]hile even the criminal acts of an employee may fall within the scope of employment, if the employee's actions are different from the type of acts he is authorized to perform *or were performed purely in his own interest*, he has departed from the scope of employment." 675 N.E.2d at 118. (emphasis added). Furthermore, the Illinois Supreme Court also held that "an employer is not responsible for acts which are clearly inappropriate to or unforeseeable in the accomplishment of an authorized result." *Id.* The court noted that although their "public employment provided the opportunity for their misconduct, by no stretch of the imagination could their actions be deemed an extension of their legitimate functions as elected officials." *Id.*

Here, Miedzianowski brought the defamatory statements against Plaintiffs while employed as a Chicago Police officer, but none of his actions were in furtherance of the City's interests. Plaintiffs surmise that threats against Plaintiffs and their children, allegations that

13

Plaintiff Klipfel had stolen money and jewelry, and false statements that Plaintiff Klipfel was a racist were committed to benefit the City. Miedzianowski fabricated claims against Plaintiffs to deflect inquiries into his criminal activity, not to aid any law enforcement objective. The goals of the Chicago Police Department are the following: protection of life, limb and property in the City of Chicago; prevention of crime; preservation of the public peace; enforcement of all laws and ordinances; arrest of law violators, and assembling competent evidence of the alleged violation; and promotion of respect and cooperation of all citizens for the law and for those sworn to enforce it. (Chicago Police Department Rules and Regulations, at p. 8). Vilifying Plaintiffs was solely for his benefit and this act "neither arose out of nor was incidental to the performance of [his] duties." *Id.* In fact, Chicago Police officers are expressly forbidden from committing any violation of law. They are prohibited from using their official position for personal gain or influence, and from making a false report. Specifically, police officers are prohibited from engaging in activities that interfere or disrupt a person's First Amendment Conduct.

### IV.  DEFENDANTS' THEORY OF DAMAGES

Plaintiffs seek compensatory damages from the City on their *Monell* claim. A defendant may only be held liable for compensatory damages for injuries proximately caused by his own conduct. See Memphis Comm. School Dist. V. Stanchura, 106 S. Ct. 2537, 2543 (1986). The City believes that there will not be sufficient evidence to support liability, let alone an award of compensatory damages.

### V. ANTICIPATED MOTIONS FOR DIRECTED VERDICT

The City anticipates that there will be insufficient evidence for a reasonable jury to find in favor of the plaintiffs on their *Monell* claim. The evidence will not support that Plaintiffs suffered any constitutional injury, that a policy of the City was the moving force behind any constitutional injury, or that the City Council was aware of any policy causing Plaintiffs'

constitutional injury and were deliberately indifferent. Finally, there will not be sufficient evidence to support that Defendant Miedzianowski's alleged acts of retaliation against plaintiffs were committed within the scope of his employment as a Chicago police officer.

                                          Respectfully submitted,

                                          Mara S. Georges
                                          Corporation Counsel of the City of Chicago


                       By:      /s/ Sara L.Ellis
                              SARA L. ELLIS
                              Assistant Corporation Counsel

SARA L. ELLIS
STEPHEN BAKER
30 North LaSalle Street, Suite 1610
Chicago, Illinois 60602
312/744-6919
Atty No. 06224868