IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| DIANE L. KLIPFEL and MICHAEL V. CASALI, | ) ) ) | | |
| Plaintiffs, | ) ) | No. | 94 C 6415 |
| v. | ) ) | Judge MANNING | |
| ROBERT RUBIN, et al., | ) ) | Magistrate Judge Mason | |
| Defendants. | ) ) | | |

**DEFENDANT CITY OF CHICAGO'S
MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendant City of Chicago ("City"), by Mara S. Georges, Corporation Counsel for the City, for its motion for judgment as a matter of law states:

**INTRODUCTION**

Plaintiffs have come to the conclusion of a four-week trial without presenting a legally sufficient evidentiary basis for a reasonable jury to find for them on their *Monell* claim against the City. Thus, pursuant to Fed.R.Civ.P. 50(a)(1), the City requests this Court to grant its motion for judgment as a matter of law on plaintiff's *Monell* claim against the City. Plaintiffs have adduced no evidence of a constitutional violation, no evidence of a custom or practice that was the cause of any alleged constitutional violation, and no evidence of deliberate indifference on the part of the policymaker for the City - - the City Council. Because plaintiffs have not established any of the elements necessary to support a *Monell* claim, this Court should not permit this claim to go to the jury but should grant the City's motion for judgment as a matter of law.

## LEGAL STANDARD

The standard in governing a Rule 50(a) motion mirrors that employed in evaluating a summary judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000). The standard for a directed verdict under Rule 50(a) is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511 (1986). The trial judge must construe the evidentiary record in favor of the non-moving party, draw all references in its favor, and resist the temptation to weigh the evidence or make credibility determinations. *Reeves*, 530 U.S. at 150-151, 120 S.Ct. at 2110.

## ARGUMENT

Under the governing law, before plaintiffs can hold the City liable under *Monell*, they first must prove that the defendant Miedzianowski in fact committed the alleged misconduct and deprived plaintiffs of their constitutional rights. If plaintiffs do not prove that defendant Miedzianowski caused them to suffer any constitutional injury, they cannot prevail against the City on their "policy" claim. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("if [plaintiffs] are unsuccessful in their claims against the Officers, they will no longer have a cause of action against the city"); *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000)("it is well established in this Circuit that a municipality's liability for a constitutional injury 'requires a finding that the individual officer[][is] liable on the underlying substantive claim.'"). Plaintiffs have failed to prove that defendant Miedzianowski caused them to suffer a deprivation of their constitutional rights.

Plaintiffs' claim against defendant Miedzianowski is that he threatened them and

retaliated against them and as a result, their First Amendment rights were chilled. However, plaintiffs have presented no evidence that their First Amendment rights were chilled in any manner as a result of defendant Miedzianowski's alleged conduct. In fact, plaintiffs have presented a wealth of the evidence to the contrary. Plaintiff Klipfel testified that she spoke with news media. (Trial Tr. 206:5-25; 207:1-22; 301:7-11 )[1]. She further testified that she spoke with her supervisors and ATF IAD about her allegations of misconduct by defendant Miedzianowski as well as the FBI and the United States Attorney's Office. (Trial Tr. 208:17-25; 209:1-11; 214:10-23; 301:14-22). Plaintiff Casali testified that he spoke with his ATF supervisors, an AUSA, and ATF IAD about his allegations of misconduct by defendant Miedzianowski, as well as the FBI. (Trial Tr.860:10-25; 861:1-5; 925:4-17; 973:1-20). He further testified that he and his wife spoke to their congressman regarding their allegations of misconduct by defendant Miedzianowski. (Trial Tr.859:8-25; 860:1-9 ). Finally, James Pate, an author for Soldier of Fortune Magazine, testified that he first contacted plaintiffs after reading about them in a Time magazine article. (Trial Tr.1342:1-23) He further testified that plaintiffs spoke with him at length about their allegations of misconduct by defendant Miedzianowski and that they were cooperative in the interviews. (Trial Tr.1364:6-17; 1371:2-3). Nowhere is there any evidence that plaintiffs' First Amendment rights were chilled as a result of defendant Miedzianowski's alleged threatening and retaliatory conduct. Thus, plaintiffs' constitution violation claim against defendant Miedzianowski must fail.

---

[1] See Ex. A for cited portions of trial transcript.

### 1. *No evidence satisfies the requirement for establishing municipal liability for the alleged custom.*

Plaintiff alleges that there exists a custom of a "code of silence." However, plaintiffs have no factual support for this allegation. There is no evidence showing that this alleged custom exists at all; at a minimum, the evidence demonstrates that this custom does not exist at a level constituting a "policy" as defined by *Monell* and its progeny. Similarly, no evidence establishes "acquiescence" or "deliberate indifference" by the City or demonstrates the necessary causal like between the alleged custom and plaintiffs' injury.

A practice of unconstitutional conduct, lacking formal approval, may provide the basis for municipal liability only if the plaintiff can prove that the final policymaking authority both knew of and acquiesced in a pattern of unconstitutional conduct. *Cornfield by Lewis v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993). Custom can be established through widespread, enduring practices that violate constitutional rights in a systematic manner. *McNabola v. Chicago Transit Authority*, 10 F.3d 501 (7th Cir. 1993). Although evidence of a persistent and deeply rooted pattern permits the inference that policymakers must have known of its existence, the plaintiff must still prove that the policymaking authority acquiesced in the pattern of unconstitutional conduct. *See, McNabola*, 10 F.3d at 511. Acquiescence must be shown by proving that the persons responsible for making municipal policy have demonstrated deliberate or reckless indifference to complaints of misconduct. If the policymakers take steps to eliminate the alleged practice, the fact that the steps are not effective is insufficient to establish acquiescence (and thus adoption) of the complained-of practice as a "policy." *Wilson v. City of Chicago*, 6 F.3d 1233, 1240 (7th Cir.

1993).

### 2. *A custom of a "code of silence" that permits threatening and retaliatory acts by Chicago police officers does not exist.*

Plaintiff alleges a custom of a "code of silence" that permits threatening and retaliatory acts by Chicago police officers against those who report acts of misconduct by Chicago police officers. The evidence clearly demonstrates that the alleged "custom" does not exist. CPD General Orders, which embody the department's system-wide policies regarding how internal investigations of its employees should be conducted, specifically state that all acts of misconduct by Chicago police officers must be investigated. (Trial Tr.1830:3-14; 1847:19-25).

Thus, not only is the CPD's express policy the opposite of that alleged, plaintiff has adduced no evidence indicating that the alleged practice is so pervasive and deeply imbedded as to constitute an informal municipal custom. During the trial, plaintiffs only adduced evidence that *they* claimed they were retaliated against and threatened as a result of this custom of a "code of silence."[2] This small number of claims, the two from plaintiffs, certainly is not evidence of a "permanent and well-settled" custom or practice giving rise to *Monell* liability on the part of the City.[3] *See Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002)(three examples are insufficient to demonstrate a custom or practice); *see also, Pineda v. City of Houston*, 291 F.3d

---

[2] Plaintiff's witness, AUSA Brian Netols, did not testify about any "code of silence" that he observed during the prosecution of Defendant Miedzianowski. He testified to only one instance of police officers covering up for the criminal acts of other police officers, that being the case of Officer Placencio and Officer Oliveras, which was tried in 2002 - - a full 10 years after the conduct complained of in this trial. (Trial Tr. 1696:22-25; 1697:1-25; 1698:1-6). The charges against Officers Placencio and Oliveras had nothing to do with acts of retaliation or threats in violation of an individual's First Amendment rights. In fact, AUSA Netols never used the term "code of silence" or "blue wall of silence" to describe any activities by any Chicago Police officers.

[3] Plaintiffs chose not to call their expert, Lou Reiter, to testify about the existence of a "code of silence" within the Chicago Police Department.

325, 329 (5th Cir. 2002)("Eleven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police force.").

And even assuming *arguendo* that there was evidence showing the existence of an alleged custom, there is a fatal dearth of evidence indicating that the City's policymaking authority informally sanctioned or acquiesced in that custom, or that the custom directly caused plaintiff's injury. Because the City Council is the "final policymaker" for the City, plaintiff must demonstrate deliberate indifference on the part of the City Council to systemic violations of the First Amendment with regard to persons retaliated against or threatened pursuant to a "code of silence" in order to satisfy the requirements of the City's *Monell* liability. *Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992). Plaintiffs has introduced absolutely *no* evidence of knowledge (either direct or inferential) on the part of City Council that the CPD allegedly had a custom or practice of a "code of silence" that permits retaliation or threats in violation of the First Amendment and *no* evidence of deliberate indifference to this alleged practice by the City Council.[4] As for direct causation, plaintiffs have adduced no evidence that they or anyone else were "retaliated against or threatened in violation of the First Amendment " as a direct result of a "custom or practice," versus the result of negligence or the specific acts of a particular police officer in a specific case. Thus, their *Monell* claim against the City fails on these elements as well. Therefore, plaintiffs cannot demonstrate any modicum of success on their *Monell* claim that the City has a practice or custom of a "code of silence" that permits retaliation or threats to

---

[4] Both plaintiffs testified that they never spoke with any member of Chicago City Council to bring this matter to the attention of the City Council. (Trial Tr. 493:8-11; the trial transcript for Mr. Casali is missing).

chill a person's First Amendment rights. As a result, plaintiffs fail to meet the basic requirements for *Monell* liability and the City's motion should be granted.

## **CONCLUSION**

Having reached the end of a four-week trial, plaintiffs have failed to adduce any evidence that would permit a reasonable jury to find in their favor on their *Monell* claim against the City. Instead of demonstrating how their First Amendment rights were chilled by the alleged acts of defendant Miedzianowski, plaintiffs presented evidence that they made their allegations regarding his misconduct to everyone including their supervisors at ATF, ATF IAD, the FBI, the United States Attorney's Office, "60 Minutes," Time magazine, Soldier of Fortune magazine, news reporters, and their congressman. Plaintiffs failed to show that their First Amendment rights were chilled in any manner by the alleged acts of defendant Miedzianowski. Thus, they have failed to present sufficient evidence of a constitutional violation that would form the basis for their *Monell* claim.

Moreover, plaintiffs have presented no evidence of custom or practice of a "code of silence" that was the driving force behind their alleged constitutional violation and no evidence of deliberate indifference on the part of the policymaker for the City - - the City Council. Because plaintiffs cannot sustain their burden on any of the elements of a claim for municipal liability - - and because they must have evidence regarding all three elements - - this Court should grant the City's motion for judgment as a matter of law, pursuant to Rule 50(a).

    Respectfully submitted,

    MARA S. GEORGES
    Corporation Counsel

By:   /s/ Sara L. Ellis
      Sara L. Ellis
      Assistant Corporation Counsel

30 N. LaSalle, Ste. 1610
Chicago, IL 60602
(312) 744-6919
Atty No. 06224868