**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DIANE L. KLIPFEL and MICHAEL V. CASALI, | ) ) ) | |
| Plaintiffs, | ) ) | No.    94 C 6415 |
| v. | ) ) | Judge MANNING |
| ROBERT RUBIN, et al., | ) ) | Magistrate Judge Mason |
| Defendants. | ) ) | |

## DEFENDANT CITY OF CHICAGO'S MOTION FOR NEW TRIAL

The City moves for a new trial, under Fed. R.Civ.P. 59(a). After a five week trial, the jury returned a verdict against the City on Count II in favor of plaintiff Klipfel. The jury further found that defendant Miedzianowski was acting within the scope of his employment, thus making the City responsible for the damage awards entered against him on Counts II and III for plaintiff Klipfel and Count II for plaintiff Casali. The City seeks a new trial because the weight of the evidence did not support a finding of *Monell* liability against the City in Count II in favor of plaintiff Klipfel nor a finding that defendant Meidzianowski acted within the scope of his employment. Further, the trial was unfair to the City because the City was prevented from presenting any evidence or witnesses in its case in chief, the Court did not permit the admission of the complete complaint register ("CR") file, and the Court, over the City's objection, gave a new jury instruction after the parties had already finished closing arguments and plaintiffs had never previously presented this jury instruction. Given that the weight of the evidence did not support the jury's findings and that the trial was unfair to the City, this Court should grant the City a new trial.

## LEGAL STANDARD

Pursuant to Fed. R.Civ.P. 59 (a), a new trial may be granted if the verdict is against the clear weight of the evidence or the trial was unfair to the moving party. *David v. Caterpillar*, *Inc.,* 324 F.3d 851, 863 (7th Cir. 2003). A new trial may be granted based on an error in the admission of evidence; however, "[a] court should only grant a new trial if the improperly admitted evidence had a substantial influence over the jury, and the result reached was inconsistent with substantial justice." *Shick .v Illinois Dep't of Human Servs.,* 307 F.3d 605, 611 (7th Cir. 2002)(internal quotations omitted).

## ARGUMENT

## I.    A FINDING OF LIABILITY AGAINST THE CITY ON THE *MONELL* CLAIM IN COUNT II WAS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE.

Count II of the Fourth Amended Complaint alleged a *Monell* claim against the City by both plaintiff Klipfel and plaintiff Casali. At the conclusion of the trial, the jury found the City liable on the *Monell* claim for the injury to plaintiff Klipfel but not liable on the *Monell* claim for the injury to plaintiff Casali. However, the jury did find that defendant Miedzianowski violated plaintiff Casali's First Amendment rights by committing acts of retaliation against him in order to chill plaintiff Casali's reporting of defendant Miedzianowski's acts of misconduct. A review of the evidence presented by plaintiffs in this case reveals that a finding of *Monell* liability on the part of the City vis-a-vis plaintiff Klipfel was against the clear weight of the evidence.

In order to hold the City liable on the *Monell* claim, plaintiff Klipfel, at the outset must prove that her constitutional injuries were caused by "a widespread practice that, although not authorized by written law or express municipal policy, [was] so permanent and well settled as to constitute a

custom or usage with the force of law." *McTigue v. City of Chicago*, 60 F. 3d 381, 382 (7th Cir. 1995). Plaintiff must also satisfy the stringent requirements as to fault and causation established by the Supreme Court. *See Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997).

Based on the evidentiary record, plaintiff Klipfel cannot show she should have prevailed on the merits as to this theory of municipal liability. There is no evidence that this alleged practice is sufficiently widespread and enduring to constitute a "practice" for purposes of section 1983 municipal liability. Moreover, in addition to failing to prove that the alleged custom or practice exists, plaintiff Klipfel proffered no evidence that the municipal policymaker for the City of Chicago – the City Council – was "deliberately indifferent" to the constitutional rights of individuals who reported misconduct on the part of Chicago police officers. Specifically, there is no evidence that the City Council was aware of these types of allegations, much less that the City Council acquiesced in any pattern of constitutional violations regarding individuals who reported misconduct on the part of Chicago police officers, as it would have to do to support a finding of deliberate indifference. *See Canton v. Harris*, 489 U.S. 378, 397 (1989) (O'Connor, J., concurring in part and dissenting in part). And finally, plaintiff Klipfel failed to meet the causation requirement to establish section 1983 municipal liability, because she did not proffer any evidence that the relevant municipal conduct was the direct cause of her alleged constitutional injuries.

A.    **No evidence satisfies the requirement for establishing municipal liability for the alleged custom.**

Plaintiff Klipfel alleged that there existed a custom of a "code of silence." However, she provided no factual support for this allegation. There was no evidence showing that this alleged

3

custom existed at all, and certainly that it existed at a level constituting a "policy" as defined by *Monell* and its progeny. Similarly, no evidence established "acquiescence" or "deliberate indifference" by the City or demonstrated the necessary causal like between the alleged custom and plaintiff Klipfel's injury.

A practice of unconstitutional conduct, lacking formal approval, may provide the basis for municipal liability only if the plaintiff can prove that the final policymaking authority both knew of and acquiesced in a pattern of unconstitutional conduct. *Cornfield by Lewis v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993). Custom can be established through widespread, enduring practices that violate constitutional rights in a systematic manner. *McNabola v. Chicago Transit Authority*, 10 F.3d 501 (7th Cir. 1993). Although evidence of a persistent and deeply rooted pattern permits the inference that policymakers must have known of its existence, the plaintiff must still prove that the policymaking authority acquiesced in the pattern of unconstitutional conduct. *Id.* at 511. If the policymakers take steps to eliminate the alleged practice, the fact that the steps are not effective is insufficient to establish acquiescence (and thus adoption) of the complained-of practice as a "policy." *Wilson v. City of Chicago*, 6 F.3d 1233, 1240 (7th Cir. 1993).

**B.    No evidence was presented to demonstrate that custom of a "code of silence" that permits threatening and retaliatory acts by Chicago police officers existed.**

Plaintiff Klipfel alleged a custom of a "code of silence" that permitted threatening and retaliatory acts by Chicago police officers against those who report acts of misconduct by Chicago police officers. The evidence clearly demonstrated that the alleged "custom" did not exist. CPD General Orders, which embody the department's system-wide policies regarding how internal investigations of its employees should be conducted, specifically state that all acts of misconduct by

Chicago police officers must be investigated.

Thus, not only is the CPD's express policy the opposite of that alleged, plaintiff Klipfel adduced no evidence indicating that the alleged practice was so pervasive and deeply imbedded as to constitute an informal municipal custom. During the trial, plaintiff Klipfel only adduced evidence that *she* claimed she and her husband were retaliated against and threatened as a result of this custom of a "code of silence." This small number of claims, the two from plaintiffs, certainly is not evidence of a "permanent and well-settled" custom or practice giving rise to *Monell* liability on the part of the City.[1] *See Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002); *see also, Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002).

And even assuming *arguendo* that there was evidence showing the existence of an alleged custom, there is a fatal dearth of evidence indicating that the City's policymaking authority informally sanctioned or acquiesced in that custom, or that the custom directly caused plaintiff's injury. Because the City Council is the "final policymaker" for the City, plaintiff must demonstrate deliberate indifference on the part of the City Council to systemic violations of the First Amendment with regard to persons retaliated against or threatened pursuant to a "code of silence" in order to satisfy the requirements of the City's *Monell* liability. *Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992). Plaintiff Klipfel introduced absolutely *no* evidence of knowledge (either direct or inferential) on the part of City Council or Police Board that the CPD allegedly had a custom or practice of a "code of silence" that permits retaliation or threats in violation of the First Amendment and *no*

---

[1] Plaintiffs chose not to call their expert, Lou Reiter, to testify about the existence of a "code of silence" within the Chicago Police Department.

evidence of deliberate indifference to this alleged practice by the City Council.[2]  As for direct causation, plaintiff Klipfel adduced no evidence that she or anyone else was "retaliated against or threatened in violation of the First Amendment " as a direct result of a "custom or practice," versus the result of negligence or the specific acts of a particular police officer in a specific case.  Thus, her *Monell* claim against the City failed on these elements as well.

## II.    A FINDING OF LIABILITY AGAINST DEFENDANT MIEDZIANOWSKI ON PLAINTIFF CASALI'S FIRST AMENDMENT CLAIM WAS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE.

The jury returned a verdict on plaintiff Casali's federal §1983 against defendant Miedzianowski.[3]  This finding of liability on the part of defendant Miedzianowski is against the clear weight of the evidence.  Nowhere within the CR file does defendant Miedzianowski make any allegations, fraudulent or otherwise, against plaintiff Casali.  Further, SA Hemsath, from ATF IA testified solely about the internal investigations into the conduct of plaintiff Klipfel and gave no testimony about any internal investigations into plaintiff Casali.   There is a dearth of evidence in the record to support a jury finding of liability against defendant Miedzianowski on this claim.

## III.   A FINDING OF SCOPE OF EMPLOYMENT BY THE JURY WAS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE.

The City brought a declaratory action against defendant Miedzianowski and both plaintiffs asserting that any alleged retaliatory actions by defendant Miedzianowski against either plaintiff were outside the scope of his employment as a Chicago Police Officer.   Defendant Miedzianowski never acted within the scope of employment when he performed any retaliatory actions against

---

[2]Plaintiff Klipfel testified that she never spoke with any member of Chicago City Council to bring this matter to the attention of the City Council.  (Trial Tr. 493, attached as Group Ex. A).

[3]The jury made a finding that the City was not liable on this claim.

plaintiffs because his actions were undertaken from a purely personal motivation totally unrelated to police work, and therefore, lie outside the scope of employment. Because the evidence presented at trial cannot support a finding of scope of employment, the City should not be held vicariously liable for the conduct of defendant Miedzianowski.

### A.     Acts done purely in the employee's own interest are not within the scope.

The issue of scope of employment, whether for the purposes of *respondeat superior* liability or indemnification under 745 ILCS 10/9-102, is one of state law. In determining issues of state law, a federal court is "but a surrogate state court." *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 750 (7th Cir. 1999). Under the law of Illinois, as authoritatively determined by its Supreme Court, an act falling within the scope of employment must not only be performed within the authorized time and space limits of employment, it must also be done at least in part to serve the employer's interest.

In *Pyne v. Witmer*, the Illinois Supreme Cour noted that while no precise definition has been accorded the term "scope of employment", broad criteria have been enunciated. These criteria, as set forth in §228 of the Restatement, Second, of Agency include conduct as within the scope of employment if, and only if,

> i.     it is of the kind he is employed to perform;
> ii.    it occurs substantially within authorized time and space limits;
> iii.   *it is actuated, at least in part, by a purpose to serve the master*.

129 Ill.2d 351, 360 (1989) (emphasis added).

Plaintiffs bear the burden of showing the contemporaneous relationship between the allegedly tortious conduct and the scope employment. *Id*. That the conduct is of a type that the servant is employed to perform is not dispositive; if there is no proof that the act was performed to serve the

master sought to be held liable, there will be no liability. *Giannoble v. P. & M. Heating and Air Conditioning, Inc.*, 233 Ill. App. 3d 1051 (1st Dist. 1992).[4] The Seventh Circuit has also recognized this principle in *Bremen State Bank v. Hartford Accident & Indemnity Co.,* 427 F.2d 425,428 (7th Cir. 1970); *see also Shockley v. Svoboda*, 342 F.3d 736, 740 (7th Cir. 2003) (act not within scope of employment if "too little actuated by a purpose to serve the master"), *citing, Duffy v. United States*, 966 F.2d 307, 314 (7th Cir. 1992).

> **B.     The actions of Miedzianowski put him outside the scope of his employment.**

Here, Miedzianowski made defamatory statements against plaintiff Klipfel and took retaliatory actions against her while employed as a Chicago Police officer, but none of his actions were in furtherance of the City's interests. Defendant Miedzianowski fabricated claims against plaintiff Klipfel to deflect inquiries into his criminal activity, not to aid any law enforcement objective. Vilifying plaintiff Klipfel was solely for his benefit and this act "neither arose out of nor was incidental to the performance of [his] duties." *Id.* In fact, Chicago Police officers are expressly forbidden from committing any violation of law. They are prohibited from using their official position for personal gain or influence, and from making a false report. Specifically, police officers are prohibited from engaging in activities that interfere or disrupt a person's First Amendment Conduct.

Further, the evidence in this case did not demonstrate that defendant Miedzianowski acted in any manner other than to serve his own interests. Superintendent Cline testified that he told defendant Miedzianowski to seek the assistance of IAD if Miedzianowski believed that someone was

---

[4]For purposes of this motion, the City will assume *arguendo* that parts (a) and (b) of the Restatement have been met.

making false allegations against him. (Tr. at 1858 ). This was done to clear Miedzianowski's name; it had nothing to do with benefitting the City. It is abundantly clear from the evidence presented at trial that defendant Miedzianowski engaged in a smear campaign against plaintiff Klipfel in order to deflect attention away from his own criminal activity. Therefore, he was acting outside the scope of his employment and the jury's finding to the contrary was against the clear weight of the evidence.

## III.  THE COURT VIOLATED FRCP 51 IN INSTRUCTING THE JURY WITH PLAINTIFFS' LATE PROPOSED INSTRUCTION.

Following closing arguments by all parties, on the morning the Court was scheduled to instruct the jury prior to its deliberation, plaintiffs proposed an additional jury instruction concerning their First Amendment claims. Plaintiffs proposed the following jury instruction:

> Retaliation, to be actionable, need merely create the potential for chilling speech on matters of public concern. It must be sufficiently adverse to present an actual or potential danger that the speech of the plaintiffs will be chilled. Adversity is measured by an objective standard and it need not actually deter the plaintiff from speaking out.

The City immediately objected to this instruction as "too little, too late" as the parties already had concluded their closing arguments and the jury instruction conference with the Court, and the jury instructions had been ruled on by the Court, and the parties delivered their closings accordingly. (Tr. at 2939-42.) Plaintiffs responded that they were justified in offering an additional instruction because defendants had misstated the law in their closing. (Tr. at 2941-42.) Defendants disagreed, but were unable to find supporting precedent in the recess allowed by the Court for their opposition to plaintiffs' late instruction, and the instruction was delivered. (Tr. at 2950.)

The Court should not have allowed the late instruction. Federal Rule of Civil Procedure 51(b) is clear: "The court must inform the parties of its proposed instructions and proposed action

on the requests before instructing the jury and *before final jury arguments.*" F.R.C.P. 51(b) (emphasis added). The Seventh Circuit has stated that "the requirement that the judge inform the parties prior to final argument of his action on requested instructions enables the parties to argue the instructions to the jury without being surprised when the instructions are given." *Siddiqi v. Leak*, 880 F.2d 904, 911 (7th Cir. 1989) *quoting Hetzel v. Jewel Companies, Inc.*, 457 F.2d 527, 535 (7th Cir. 1972). *See also United States v. Clay*, 495 F.2d 700, 708 (7th Cir. 1974) ("The obvious object of the rule in point is to require the judge to inform the trial lawyers in a fair way what the charge is going to be, so that they may intelligently argue the case to the jury.")

The City was prejudiced by the late instruction. The City was surprised and left unable to alter its completed closing. Like most litigants, the City crafted its closing argument to the jury on the basis of the announced instructions the Court ruled would be granted. Plaintiffs should not have been allowed to review the City's closing, scour case law for targeted language in order to rebut it, and then have it read to the jury by the Court as instruction, without notice to the City. *See* F.R.C.P. 51(b). Had the City known of the late granted jury instruction, its closing would have been tailored to address its language. Without notice – as provided by Rule 51 – the City was left without recourse to address its argument on the issue to the jury. The Court's grant of the plaintiffs' late proposed instruction violated Rule 51, and unfairly prejudiced the City on plaintiffs' First Amendment claims. The Court should grant the City a new trial because of the prejudice caused by its mistake of law in granting the instruction without notice.

## IV.   THE COURT ABUSED ITS DISCRETION BY EXCLUDING THE CITY'S WITNESSES.

Plaintiffs' moved *in limine* seeking to bar the City from calling any witnesses at trial. Plaintiffs argued that during the course of discovery the City had not supplemented its response to plaintiffs' contention interrogatories concerning trial witnesses. The City responded that exclusion was not called for, as plaintiff had suffered no prejudice as any failed disclosure, and as the City, with limited exceptions, intended to call only witnesses listed on plaintiffs' trial list, and already deposed by the plaintiffs. The Court granted the motion in part as to James Doody, the singular fact witness the City wished to call who was not listed by plaintiffs on their trial list nor deposed, but withheld ruling on the remaining witnesses. (1/19/07 Order at Dkt. #411.) Subsequently, just following the close of plaintiffs' case, the Court prohibited the defendants from calling any witnesses in its defense following plaintiffs' argument that they were prejudiced by the lack of disclosure despite having deposed the proposed witnesses. (Tr.. at 2606.) As a result, the City was unable to present any factual witnesses or documentary evidence in its defense to the jury.

The Court relied on Federal Rule of Civil Procedure 37(c)(1) in barring the defendants from calling witnesses. Rule 37(c)(1) provides: "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial. . . any witness or information not so disclosed." The decision to admit previously undisclosed testimony is entrusted to the discretion of the Court. *Keach v. U.S. Trust Co.*, 419 F.3d 626, 640 (7th Cir. 2005). The Court's discretion "should be guided by the following factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the

11

prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.* Additionally, in a case where the exclusion would be catastrophic to a party's case – as it was for the City – the sanction "must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." *Sherrod v. Lingle*, 223 F.3d 605, 612 (7th Cir. 2000).

The City cannot dispute that it did not timely supplement its responses to plaintiffs' contention interrogatories requesting the names of its trial witnesses and the nature of their proposed testimony. Over the course of this 13 year-old case, responsibility for the City's representation passed through the hands of several attorneys and in the process the disclosure was not made. Certainly, this is not substantial justification as required by the rule, but neither is it evidence of bad faith or willfulness on behalf of the City. More importantly, the plaintiffs have not been harmed by the late disclosure. Plaintiffs were more than aware of the City's proposed witnesses. Plaintiffs listed Eugene Karzcewski, Wendy Isaac (Marrello), and Edmund Stack as "Will Calls" on their witness list. Additionally, Lori Jolley and James Adamcik were deposed by the plaintiffs in the matter. Finally, all these witnesses were disclosed in plaintiffs' in their responses to the City's First Set of Interrogatories on June 25, 2003 (Ex. B pp. 4-9) and their names appear throughout the documents entered as exhibits by plaintiffs in this case. Plaintiffs cannot claim prejudice or surprise at the City's effort to call these witnesses when they disclosed them as witnesses having relevant knowledge. Neither can plaintiffs claim to be unaware of their proposed testimony, as they deposed each of these witnesses and question them fully concerning the events relevant to this case.

The City was also prohibited from calling Sgt. James Doody as a witness. Sgt. Doody was the Internal Affairs officer who opened the investigation that led to Miedzianowski's arrest,

12

indictment, and conviction. Sgt. Doody would have testified extensively about the CPD's efforts

to the CPD's efforts to investigate and prosecute Miedzianowski. The Court ruled that the City

could not call him, because he was not disclosed, but plaintiffs were aware of Sgt. Doody both

through disclosed documents and the deposition testimony of Eugene Karzcewski, given on February

11, 2004. (Ex. C at p. 61.) Courts have held that disclosure in deposition is adequate disclosure to

preclude the drastic sanction of excluding a witness from trial testimony. *See Stolarczyk v. Senator

Int'l Frieght Fowarding, LLC,* 376 F.Supp.2d 834, 843 (N.D. Ill. 2005); *Buffone v. Rosebud

Restaurants, Inc.* 2006 WL 2425327, *3 (N.D. Ill. Aug. 21, 2006) (Ex. D); and *Cox v. Prime

Financial Mortgage Corp.*, 2006 WL 1049948, *2 (N.D. Ill. April 20, 2006) (Ex. E); *see also*

advisory committee note to F.R.C.P. 26(e)(1) (a party has "no obligation to supplemental or

corrective information that has been otherwise made known to the parties in writing or during the

discovery process, as when a witness not previously disclosed is identified during the taking of a

deposition.")

Without these witnesses, the City was not only unable to present its defense in terms of

testimony, it was also precluded from introducing any documentary evidence to the Jury. Key

documents that the City was precluded from introducing included the CR of the underlying

allegations (See Section V below) and the CPD General Orders which state the CPD's rules and

regulations on the behavior of its officers including: G.O. 92-01 "Human Rights and Resources"

(Proposed Ex. 3); G.O. 93-03 et seq. "Complaint and Disciplinary Procedures" (Proposed Ex. 6-13);

G.O. 97-1 "Criminal Organizations" (Proposed Ex. 15); G.O. 92-01 Addendum "The First

Amendment" (Proposed Ex. 29); and City of Chicago Department of Police Rules and Regulations

(Proposed Ex. 32). Plaintiffs alleged that the CPD's policies and practices caused their injury, but

these General Orders and Rules and Regulations offer documentary evidence that the CPD's policies and practices were in direct opposition to the plaintiffs' allegations. *See Thompson v. City of Chicago*, 472 F.3d 444, 455-56 (7th Cir. 2006).

Because the Court would not allow the City to call witnesses to introduce this information, the City was unable to present it to the jury and was not able to present an adequate defense. Given the amount and nature of discovery given to plaintiffs concerning these proposed witnesses, and the importance of their testimony, the Court's decision to bar the City from introducing their testimony was an abuse of its discretion. The Court should reconsider its prior decision and grant the City a new trial, allowing for the introduction of these witnesses and providing for the introduction of the relevant documentary evidence.

## V.     THE CR REPORT SHOULD HAVE BEEN ADMITTED.

The City also sought to admit the whole of Complaint Register No. 197823 as an exhibit, on the basis of foundational testimony laid during the cross examination of Lt. Wendy Isaac who was called during plaintiffs' case-in-chief. (Tr. at 1306-07). Lt. Isaac was the police officer investigator responsible for compiling and completing the report of the CPD Internal Affairs Division's investigation of Miedzianowski's alleged activity in February 1992. Plaintiffs, during their case-in-chief, introduced 11 pieces of the 68 total sections of the CR report without objection from the defendants. The City did not object because it intended to introduce the whole of the report into evidence. The Court did not allow the City to introduce evidence during the plaintiffs' case, and again would not allow the City to introduce the report following the close of plaintiffs' evidence because the City could not call a witness to introduce the report. The City raised the issue that the exhibit's foundation had already been laid, and cited the Transcript, but the Court would not allow

14

for its introduction. Plaintiffs also complained that the report was hearsay and therefore inadmissible.

The Report of the CPD's CR 197823 is direct evidence of the CPD's investigation, and not hearsay under Federal Rule of Evidence 803(8)(C). FRE 803(8)(C) "Public Records and Reports" states that such a report is not hearsay:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness: (8)Records, reports, statements, or data compilations, in any form, or public offices or agencies, setting forth . . . (C) in civil actions and proceedings. . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Courts have held that similar reports of law enforcement agency investigations are admissible in civil cases. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 161-62 (1988); *Combs v. Wikinson*, 315 F.3d 548, 554-56 (6th Cir. 2002); *Clark v. Clabaugh*, 20 F.3d 1290, 1294-95 (3d Cir. 1994); *Foster v. General Motors Corp.*, 20 F.3d 838, 839 (8th Cir. 1994). The report should also be admitted under Fed. R. Evid. 106, the doctrine of completeness. Plaintiffs entered only 11 of the 68 sections of the report, in addition to 40 additional documents from the CR file, but not deemed pertinent to the final report. This Court should not allow plaintiffs to cherry-pick the desirable evidence from a single file for presentation to the jury, without allowing for the whole of the file to be presented. The Court abused its discretion in excluding the complete file; direct evidence of the CPD's investigation at the center of the allegations in this case. This Court should grant the City a new trial which should include the whole of the CR file as admitted evidence.

## <u>CONCLUSION</u>

WHEREFORE, for all these reasons, the City asks that this Court grant it a new trial pursuant to FRCP 59.

Respectfully Submitted,

s/Stephen P. Baker
Stephen Baker
Sara Ellis

Assistant Corporation Counsel
Police Policy Division
30 North LaSalle, Suite 1610
Chicago, IL 60602