# G.O. 92-01      Chicago Police Department

| | |
|---|---|
| **TITLE:** | **HUMAN RIGHTS AND HUMAN RESOURCES** |
| **ISSUE DATE:** | **03 July 1992** |
| **EFFECTIVE DATE:** | **04 July 1992** |
| **DISTRIBUTION** | **C** |
| **RESCINDS:** | **GENERAL ORDERS: 81-5; 84-9; 87-8; 88-6; 88-9; 88-12; 88-16. DEPARTMENT SPECIAL ORDERS: 85-6; 85-18; 87-1; 87-14; 88-3; 91-14. DEPARTMENT NOTICES: 87-56; 91-33.** |

## I.    PURPOSE

This order:

A.    sets forth Department policy, procedures and guidelines governing the human rights of all individuals;

B.    defines the responsibilities of Department members concerning applicable laws; and

C.    provides information on City, State and Federal resources.

## II.    GENERAL INFORMATION

As one of the world's largest cities, Chicago encompasses a variety of communities, each with its own distinctive cultures, lifestyles, customs and problems. The cosmopolitan nature of the City is further manifested by the diverse ethnic and sociological background of its people. However, all persons in each area of the City share the common need for protection and service through objective and impartial law enforcement.

The recognition of individual dignity is vital in a free society. Since all persons are subject to the law, all persons have the right to dignified treatment under the law. The protection of this right is a fundamental responsibility of the Department and its members. Every Department member is responsible for treating each person with respect, mindful that the person possesses human emotions and needs.

**EXHIBIT**

tabbies® 3

The daily interaction of Department members with citizens presents a unique opportunity to strengthen police-community relations. In all contacts with the public, members must inspire respect for themselves as individuals and as representatives of the Department by respecting the human rights of the members of the community.

## II.     POLICY

The Chicago Police Department is committed to observing, upholding and enforcing all laws relating to individual rights. Department members will respect and protect each person's human rights and comply with all laws relating to human rights.

In addition to respect for those human rights prescribed by law, Department members will treat all persons with the courtesy and dignity which is inherently due every person as a human being. Department members will act, speak and conduct themselves in a professional manner, recognizing their obligation to safeguard life and property, and maintain a courteous, professional attitude in all contacts with the public.

Members will not exhibit any bias or prejudice against an individual or group because of race, color, gender, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, military discharge status, or source of income. Members will not exhibit a condescending attitude or direct any derogatory terms toward any person in any manner.

The Chicago Police Department is committed to working with the communities of the City to serve and protect; to safeguard lives and property; to guarantee all persons fair and equal treatment under the law; and to ensure that all persons may enjoy their fundamental rights as human beings.

## IV.    ADDENDA

The addenda which comprise this order are:

| Addendum Number | Subject |
|---|---|
| 1 | Human Rights: Federal, State and Municipal Law |
| 2 | First Amendment |
| | (Addendum 3 has been rescinded.) |
| 4 | Hate Crimes / Criminal and Non-Criminal Incidents Motivated by Hate |

G.O. 92-01     **HUMAN RIGHTS AND HUMAN RESOURCES**
ISSUE DATE:    03 July 1992                                                                Page 2

POL 00008

| 4B | Hate Crimes / Criminal and Non-Criminal Incidents Motivated by Hate |
|----|--------------------------------------------------------------------|
|    | (Addendum 5 has been rescinded.) |
| 6A | People with Disabilities |
| 7 | Abused and Neglected Child Offenses |
| 8A | The Elderly |
| 9 | Crime Victim Assistance |
| 10 | Community Assessment Center |
| 11 | Alcohol and Drug Dependent Persons |
| 12 | Human Resources Directory |
| 13 | Testing for HIV Status, Disclosure of HIV Status, Discrimination Against Individuals Based on HIV Status |

(Item IV revised, 12 July 2000, General Order 92-01A.)

Matt L. Rodriguez
Superintendent of Police

91-071 WHB, SAM, JVD,
RM, JAB, MU (mmd)

# G.O. 92-01A                **Chicago Police Department**

**TITLE:**              **HUMAN RIGHTS AND RESOURCES**

**ISSUE DATE:**         **12 July 2000**

**EFFECTIVE DATE:**     **13 July 2000**

**DISTRIBUTION:**       **C**

**RESCINDS:**           **Addendum 3**

G.O. 92-01-01A          HUMAN RIGHTS AND RESOURCES
ISSUE DATE:             12 July 2000                                          Page 3

*PoL* 00009

**I.    PURPOSE**

The text of Item IV has been revised to reflect the current addenda.

**II.    REVISION**

The text of Item IV reads as follows:

**IV.    ADDENDA**

The addenda which comprise this order are:

| Addendum Number | Subject |
|---|---|
| 1 | Human Rights: Federal, State and Municipal Law |
| 2 | First Amendment |
|  | (Addendum 3 has been rescinded.) |
| 4 | Hate Crimes / Criminal and Non-Criminal Incidents Motivated by Hate |
| 4B | Hate Crimes / Criminal and Non-Criminal Incidents Motivated by Hate |
|  | (Addendum 5 has been rescinded.) |
| 6A | People with Disabilities |
| 7 | Abused and Neglected Child Offenses |
| 8A | The Elderly |
| 9 | Crime Victim Assistance |
| 10 | Community Assessment Center |
| 11 | Alcohol and Drug Dependent Persons |
| 12 | Human Resources Directory |
| 13 | Testing for HIV Status, Disclosure of HIV Status, Discrimination Against Individuals Based on HIV |

Status

Terry G. Hillard
Superintendent of Police

99-006 BSU(PMD)

POL 00011

| GENERAL ORDER | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|
| | 28 March 1981 | 29 March 1981 | 81-5 |

| SUBJECT | DISTRI-BUTION | AMENDS |
|---|---|---|
| ABUSED AND NEGLECTED CHILD OFFENSES | B | |

| RELATED DIRECTIVES | RESCINDS |
|---|---|
| Public Act 81-1077, Abused and Neglected Child Reporting Act | General Order 76-8 |

I. PURPOSE

This order:

A. continues Department policy for handling abused and neglected child offenses.

B. sets forth pertinent sections and definitions from the Abused and Neglected Child Reporting Act, Illinois Revised Statutes, Chapter 23, Section 2053-2054.

C. continues procedures and requirements for the preliminary and follow-up investigations of cases involving abused and neglected children.

II. POLICY

In all cases of child abuse or neglect, the Department's main concern is to safeguard the child's emotional and physical well-being. All personnel will be guided by the knowledge that a sensitive approach to handling these situations will ease the trauma inherent in child abuse and neglect cases.

III. THE ABUSED AND NEGLECTED CHILD REPORTING ACT

A. The amended text of Chapter 23, Section 2054, Illinois Revised Statutes, is as follows:

"Any physician, hospital, hospital administrator and personnel engaged in examination, care and treatment of persons, surgeon, dentist, osteopath, chiropractor, podiatrist, Christian Science Practitioner, coroner, medical examiner, school personnel, truant officer, social worker, social services administrator, registered nurse, licensed practical nurse, director or staff assistant of a nursery school or a child day care center, law enforcement officer, registered psychologist, or field personnel of the Illinois Department of Public Aid or the Department of Public Health, Department of Mental Health and Developmental Disability, Department of Corrections, probation officer, or any other child care or foster care worker having reasonable cause to believe a child known to them in their professional or official capacity may be an abused child or a neglected child shall immediately report or cause a report to be made to the Department. Whenever such person is required to report under this Act in his capacity as a member of the staff of a medical or other public or private institution, school, facility or agency, he shall make report immediately to the Department in accordance with the provisions of this Act and may also notify the person in charge of such institution, school, facility or agency or his designated agent that such report has been made. The privileged quality of communication between any professional person required to report and his patient or client shall not apply to situations involving abused or neglected children and shall not constitute grounds for failure to report as required by this Act. In addition to the above persons required to report suspected cases of abused or neglected children, any other person may make a report if such person has reasonable cause to believe a child may be an abused child or a neglected child. A child whose parent, guardian or custodian in good faith selects and depends upon spiritual means through prayer alone for the treatment or cure of disease or remedial care may be considered neglected or abused, but not for the sole reason that his parent, guardian or custodian accepts and practices such beliefs."

B. Definitions (Chapter 23, Section 2053, Illinois Revised Statutes)

"As used in this Act unless the context otherwise requires:

" 'Child' means any person under the age of 18 years.

" 'Department' means Department of Children and Family Services.

" 'Local law enforcement agency' means the police of a city, town, village or other incorporated area or the sheriff of an unincorporated area.

" 'Abused child' means a child whose parent or immediate family member, or any person responsible for the child's welfare, or any individual residing in the same home as the child, or a paramour of the child's parent:

"a. inflicts, causes to be inflicted, or allows to be inflicted upon such child physical injury, by other than accidental means, which causes death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function;

"b. creates a substantial risk of physical injury to such child by other than accidental means which would be likely to cause death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function;

"c. commits or allows to be committed any sex offense listed in the Criminal Code of 1961, as amended, against any child under 18;

"d. commits or allows to be committed an act or acts of torture upon such child; or

"e. inflicts excessive corporal punishment.

" 'Neglected child' means any child whose parent or other person responsible for the child's welfare does not provide the proper or necessary support, education as required by law, or medical or other remedial care recognized under State law as necessary for a child's well-being, or other care necessary for his or her well-being, including adequate food, clothing and shelter, or who is abandoned by his or her parents or other person responsible for the child's welfare."

IV.   PROCEDURES

A.   The first officer who makes initial contact with an abused or neglected child will:

   1.   ensure that emergency medical attention, if required, is immediately obtained.

   2.   ensure that the appropriate area Violent Crimes and Youth units are notified when the investigation indicates that any child:

      a.   has been physically injured, other than accidentally; or

      b.   has been seriously abused, e.g., physically chained to a bed, or forced to eat or drink noxious materials or liquids; or

      c.   has been seriously neglected, e.g., starved (gross malnutrition); or

      d.   has been sexually molested or a victim of any act which contributes to the sexual delinquency of the child; or

      e.   has been injured mentally or emotionally to such a degree that the child threatens suicide, appears severely disturbed, etc.; or

      f.   has been left without adult supervision for such a period of time and/or under such conditions that would endanger the welfare of the child; or

      g.   has been denied necessary medical care by a parent or guardian; or

      h.   has been denied necessary support by a parent or guardian or other remedial care recognized under state law as necessary for his/her well-being; or

      i.   is deceased as the result of other than obviously natural or accidental causes.

B.   The preliminary investigating officer will:

   1.   record the name of the notified detective in the appropriate box of the proper case report.

   2.   record the name of the notified youth officer in the box provided for youth officer notification (first watch will notify Youth Division Headquarters) and advise the youth officer of the:

      a.   type of case

      b.   condition of child

      c.   location of child (in home, hospital, police station)

      d.   conditions under which the child was found

      e.   other children in the home.

   3.   indicate any instructions received from the youth officer in the narrative section of the proper case report, and

   4.   in the extra copies required box, request two copies be sent to the affected area youth unit.

   5.   request the services of an evidence technician when photographs would have evidentiary value.

C.   The Detective Division will:

   1.   notify the affected area youth unit  via PAX or Bell telephone when an abused or neglected child offense is discovered while conducting any type of investigation (first watch will notify Youth Division Headquarters).

   2.   notify the Communication Operations Section and give the location of occurrence for proper Department notification and recording of the incident (beat car will be assigned if necessary).

   3.   coordinate any follow-up investigation with the Youth Division when an abused or neglected child offense involves both divisions.

D.   Youth Division

   1.   When the Youth Division is notified of, or discovers an abused or neglected child offense (including sex) in which a child has been hospitalized or is the victim of any serious physical injury or neglect, the youth officer will:

      a.   immediately notify the Illinois Department of Children and Family Services hot line in Springfield, Illinois (telephone 800-252-2873) for 24 hour service and

      b.   submit a Child Care Referral/Placement Report (CPD-24.108) to the agency within 24 hours of the incident. Written reports and notifications will be made by the assigned youth officer in all abused or neglected child offenses.

   2.   In addition, when the abused or neglected child incident is discovered by the Youth Division, the youth officer will notify:

      a.   the Communication Operations Section and give the location of occurrence for proper Department notification and recording of the incident (beat car will be assigned if necessary).

      b.   the Violent Crimes Unit of the affected Detective Division Area.

   3.   The Youth Division will inform the Detective Division of any developments in their investigation which would require a reclassification of an offense.

   4.   The Youth Division will cooperate with appropriate agencies interested in supplying protective or social services. For example:  The Mental Health Division of the Chicago Board of Health provides psychiatric help for child victims of sexual assault and their parents.  The Board of Health will accept cases referred by the Youth Division with the following exceptions:

a.   Persons who can afford private psychotherapy.

b.   Persons who are under the active supervision of any court.

c.   Retarded persons who are limited in their ability to benefit from psychotherapy.

d.   Persons unwilling or unable to cooperate with mental health workers.

e.   Children under five years of age.  (However, the parents of these children can receive advice and therapy.)

| indicates new or revised item

Superintendent of Police

192-80  CA

Pol 00014

| GENERAL ORDER | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|
| | 27 November 1984 | 28 November 1984 | 84-9 |

| SUBJECT | DISTRI-BUTION | AMENDS |
|---|---|---|
| HANDICAPPED AND IMPAIRED PERSONS | C | |

| RELATED DIRECTIVES | RESCINDS |
|---|---|
| General Order: Civil Rights | |

I.  PURPOSE

This order states the Department's policy to observe the laws and regulations regarding the rights of handicapped/impaired persons to receive equal access to police resources.

II.  DEFINITIONS

A.  "Handicapped Individual" means any person who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such impairment or is regarded as having such impairment.

B.  "Physical or Mental Impairment" includes but is not limited to such diseases and conditions as orthopedic, visual, speech and hearing impairments; cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, drug addiction and alcoholism.

C.  "Major Life Activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

III.  POLICY

It is the policy of the Chicago Police Department to provide services without regard to race, sex, color, national origin, handicap or age.  Furthermore, the Department is committed to overcome impediments which impact the ability of handicapped/impaired persons to obtain equal access to police services, programs, activities and facilities.

IV.  GENERAL INFORMATION

A.  A telecommunication device for the deaf (TDD) is installed in the Communication Operations Section.  This device allows hearing impaired persons who also possess such equipment to communicate with the police on a 24 hour-a-day basis in emergency and non-emergency situations by using the 922-1414 number.

B.  Public notices, pamphlets, newsletters, etc., will contain a statement that affirms the Department's policy regarding handicapped/impaired persons.

C.  Department members who encounter any problems in handling or servicing handicapped/impaired persons may request assistance from the Senior Citizens' Services Division, Monday through Friday, 0800-1630 hours, on PAX 0-671-2 or Bell 744-8006-7.

Fred Rice

Superintendent of Police

84-118  MU

ρₒ∟ 00015

| ADDENDUM TO:<br><br>General Order 84-9 | DATE OF ISSUE<br><br>10 June 1985 | EFFECTIVE DATE<br><br>11 June 1985 | ADDENDUM NO.<br><br>1 |
|---|---|---|---|

| SUBJECT<br><br>SIGN LANGUAGE INTERPRETERS | DISTRI-<br>BUTION<br><br>C | RESCINDS |
|---|---|---|

I.  PURPOSE

This addendum:

A.  informs Department members of the availability of sign language interpreters for hearing impaired persons.

B.  sets forth procedures for requesting sign language interpreters.

C.  provides certain guidelines for custodial interrogations of hearing impaired persons to ensure the individual's constitutional rights.

II.  GENERAL REQUIREMENTS

A.  Department members will make every effort to communicate with hearing impaired persons, e.g., complainants, victims and witnesses, in need of assistance or information. This will include utilizing written communication and attempting to locate an available Department member capable of communicating via sign language. (Except in unusual circumstances, family members and friends will <u>not</u> be utilized to interpret for hearing impaired persons).

B.  If the situation indicates the need for a sign language interpreter, the member will request authorization from his watch commander/unit commanding officer to obtain such assistance from the Senior Citizens' Services Division, Monday through Friday, 0800-1630 hours, on PAX 0-671-2 or Bell 744-8006-7 and at all other hours from Operations Command on PAX 0-301 or Bell 744-6301.

NOTE:  When the services of a sign language interpreter (authorized non-Department member) are utilized, the watch commander/unit commanding officer on whose watch the interpretation service was rendered will sign the interpreter's billing form and send one copy to the Assistant Deputy Superintendent, Finance Division.

C.  The Department will provide qualified sign language interpreters for Department sponsored workshops, seminars, police community meetings, etc., when it has received advanced notification (generally, five business days) that hearing impaired persons will be in attendance.

D.  Hearing impaired persons will be informed that any time a Department authorized sign language interpreter is used, the service is provided without cost.

III.  INTERROGATIONS

A.  If a hearing impaired person is arrested and a qualified sign language interpreter is not immediately available and communication is otherwise inadequate, the Department member will photocopy the reverse side of this addendum and present a copy to the hearing impaired person. **Interrogation will be deferred pending the arrival of an interpreter.**

B.  When a sworn member conducts a custodial interrogation of a hearing impaired person, he will:

1.  follow the applicable provisions of the General Order entitled "Interrogations: Field and Custodial."

2.  ensure that a qualified sign language interpreter is used to communicate the required Advice of Rights (Miranda Warnings) in the type of sign language in which the hearing impaired person is competent, e.g., American Sign Language or Signed English.

*Fred Rice*

Superintendent of Police

121-81 MU

### Notice to Hearing Impaired Persons

THE CHICAGO POLICE DEPARTMENT WILL PROVIDE A QUALIFIED SIGN LANGUAGE INTERPRETER FOR YOU WITHOUT COST AND WILL DEFER INTERROGATION PENDING THE ARRIVAL OF AN INTERPRETER.

Advice of Rights (Miranda Warnings)

YOU HAVE A RIGHT TO REMAIN SILENT.

IF YOU CHOOSE NOT TO REMAIN SILENT, ANYTHING YOU SAY OR WRITE CAN AND WILL BE USED AGAINST YOU IN A COURT OF LAW.

YOU HAVE A RIGHT TO CONSULT A LAWYER BEFORE ANY QUESTIONING AND YOU HAVE A RIGHT TO HAVE THE LAWYER PRESENT WITH YOU DURING ANY QUESTIONING.

YOU NOT ONLY HAVE A RIGHT TO CONSULT WITH A LAWYER BEFORE ANY QUESTIONING BUT, IF YOU LACK THE FINANCIAL ABILITY TO RETAIN A LAWYER, A LAWYER WILL BE APPOINTED TO REPRESENT YOU BEFORE ANY QUESTIONING, AND YOU MAY HAVE THE APPOINTED LAWYER PRESENT WITH YOU DURING ANY QUESTIONING.

IF YOU CHOOSE NOT TO REMAIN SILENT AND DO NOT WISH TO CONSULT WITH A LAWYER OR HAVE THE LAWYER PRESENT, YOU STILL HAVE THE RIGHT TO REMAIN SILENT AND THE RIGHT TO CONSULT WITH A LAWYER AT ANY TIME DURING THE QUESTIONING.

After of sign language interpreter has given the Miranda warnings to the hearing impaired person, the interpreter will ascertain the following:

DO YOU UNDERSTAND EACH OF THESE RIGHTS?

DO YOU WISH TO ANSWER QUESTIONS AT THIS TIME?



| ADDENDUM TO: | DATE OF ISSUE | EFFECTIVE DATE | ADDENDUM NO. |
|---|---|---|---|
| General Order 64-9 | 23 October 1985 | 26 October 1985 | 2 |

| SUBJECT | DISTRIBUTION | RESCINDS |
|---|---|---|
| HANDICAPPED PERSONS PARKING IDENTIFICATION CARDS AND DISABLED DRIVER'S PARKING PERMITS | B | Department Special Order 80-11 Department Notice 80-44 |

I.   PURPOSE

    This addendum:        Ro L  00018

    A.  informs Department members of the Handicapped Persons Parking Identification Card which is authorized under the provisions of Chapter 95½, Section 11-1301.2, Illinois Revised Statutes.

    B.  continues in effect the Department's authority to issue Disabled Driver's Parking Permits (CPD-22.210) and the procedures for permit control.

    C.  provides certain definitions relative to handicapped persons as set forth in the Municipal Code of Chicago and the Illinois Revised Statutes.

    D.  provides guidance for members enforcing the provisions of the Municipal Code of Chicago in instances occurring either on or off the public way which involve illegal parking in locations for handicapped parking.

II.   DEFINITIONS

    A.  Handicapped Person (for the purpose of this addendum):

        Every natural person who is unable to walk 200 feet or more unassisted by another person or without the aid of a walker, crutches, braces, prosthetic device or a wheelchair or without great difficulty or discomfort due to the following impairments:  neurologic, orthopedic, respiratory, cardiac, arthritic disorder, blindness, or the loss of function or absence of a limb or limbs (reference Chapter 95½, Section 1-159.1., Illinois Revised Statutes).

    B.  Handicapped Persons Identification Card:

        A card issued by the Illinois Secretary of State to a handicapped person or a not-for-profit organization that transports handicapped persons, to designate and identify a vehicle not owned by the handicapped person or displaying a handicapped or disabled veteran's license plate, to indicate when a vehicle is being used to transport handicapped person(s) and entitles that vehicle to the privileges that would be afforded a handicapped licensed vehicle (reference Chapter 95½, Section 11-1301.2, Illinois Revised Statutes).

    C.  Disabled Driver's Parking Permit:

        A permit issued by the City of Chicago to a handicapped person authorizing that individual the privilege of parking in a specifically designated location for the purpose of carrying on his employment, occupation or business (reference Municipal Code of Chicago, Chapter 27-414.1).

    D.  Handicapped Person Parking Privileges:

        A motor vehicle bearing registration plates issued to a handicapped person, to a disabled veteran, or bearing a Handicapped Persons Parking Identification Card is exempt from the payment of parking meter fees and exempt from any statute or ordinance imposing time limitations on parking, except limitations of one-half hour or less, on any street or highway zone, or any parking lot or parking place which are owned, leased or owned and leased by a municipality or a municipal parking utility; but, such vehicle shall be subject to the laws which prohibit parking in "no stopping" and "no standing" zones in front of or near fire hydrants, driveways, public building entrances and exits, bus stops and loading areas, and is prohibited from parking where the motor vehicle constitutes a traffic hazard (reference Chapter 95½, Section 11-1301.1, Illinois Revised Statutes).

III.   GENERAL INFORMATION

    A.  Handicapped Persons Parking Identification Cards and Disabled Driver's Parking Permits must be prominently displayed on the dashboard or visor of a vehicle.  Department members are directed to be alert for these cards when performing enforcement duties.

    B.  The home address of the individual issued a Handicapped Persons Parking Identification Card or a Disabled Driver's Parking Permit will not appear on the card (Chapter 95½, Section 11-1301.2 (c), Illinois Revised Statutes).

    C.  Field personnel will:

        1.  prepare a To-From-Subject report to their district commander/unit commanding officer to bring repeated violations of the parking privileges by Disabled Driver's Parking Permit holders to the attention of the Disabled Driver's Parking Permit Committee.

        2.  follow normal traffic enforcement procedures when processing violations of the parking privileges by Disabled Driver's Parking Permit holders, or holders of licenses or cards issued by the Secretary

IV.   HANDICAPPED PERSONS PARKING IDENTIFICATION CARD

    A.   The Illinois Vehicle Code provides for the issuance of a Handicapped Persons Parking Identification Card. This card will be used to identify a vehicle which is not equipped with special Illinois handicapped persons registration plates, but which is being used to transport a handicapped person. These permits will be 8½"x14" flat or 8½"x7" folded and will be bright orange with black lettering and a serial number prefix of "P" for persons with permanent disabilities or bright green with black lettering and a serial number prefix of "T" for persons with temporary disabilities that exceed twelve months.

    B.   The Handicapped Persons Parking Identification Card issued by the Secretary of State may be obtained by forwarding a copy of the "Certification for Handicapped Plates or Handicapped Parking Card" application (VSD-62.4) to the Office of the Secretary of State, Non-Standard Plate Section, Room 537, Centennial Building, Springfield, Illinois 62756. There is no fee for these Parking Identification Cards, however, the application must be completed by the applicant and the physician.

V.   DISABLED DRIVER'S PARKING PERMITS

    A.   Disabled Driver's Parking Permits are issued by the Office of the Assistant Deputy Superintendent, Traffic Division, Chicago Police Department, 510 North Peshtigo Court, Chicago, Illinois 60611, and are issued to a handicapped individual for a particular location approved by the Disabled Driver's Parking Permit Committee for the sole purpose of enabling the handicapped person to carry on his employment, occupation or business.

    B.   The Disabled Driver's Parking Permit will be of a different color each year, 4"x11" in size, and will contain the name and driver's license number of the permit holder, a photograph of the permit holder, the address where the permit is valid, the hours when the permit is valid, and the expiration date. (All permits expire on 31 January of the year following issuance.)

    C.   The Office of the Assistant Deputy Superintendent, Traffic Division, will provide an Application for Disabled Driver's Parking Permit/Chicago Police (CPD-22.211) to handicapped persons requesting permits.

    D.   The handicapped applicant and his/her physician will complete the Application For Disabled Driver's Parking Permit form and submit it for approval. Renewal applications may be filed between 1 November and 15 December each year.

    E.   The Office of the Assistant Deputy Superintentendent, Traffic Division will:

        1.   receive and examine the Application for Disabled Driver's Parking Permit for required information.

        2.   notify applicants to appear at committee hearings.

        3.   arrange surveys necessary to determine permit locations.

        4.   prepare permits for approved applicants and provide for the reissuance of permit cards to persons who comply with renewal requirements.

        5.   inform the affected district of the locations where permit parking privileges will be exercised, the identity of permit holders within the district, and the provisions and limitations governing such parking permits.

    F.   The Assistant Deputy Superintentendent, Traffic Division, will establish a Disabled Driver's Parking Permit Committee and will approve and exercise final authority over the issuance of Disabled Driver's Parking Permits.

    G.   The Disabled Driver's Parking Permit Committee will meet each month, if necessary to interview applicants for permits and make recommendations to the Assistant Deputy Superintendent, Traffic Division. They will also review reports of repeated parking violations by permit holders and recommend revocation if such action is indicated.

VI.   ENFORCEMENT GUIDELINES

    A.   Upon receipt of a communication from the Office of the Assistant Deputy Superintendent, Traffic Division, district commanders will ensure that field personnel receive prompt notification concerning locations where the permit parking privileges exercised by disabled drivers will be allowed. Such locations (and the additional information outlined in Item V-E-5 of this addendum) will be included in updated Beat Information Sheets (CPD-21.927).

    B.   Members enforcing the provisions of the Municipal Code of Chicago concerning illegal parking in locations designated for handicapped parking in public and private parking facilities and on other private property will follow the applicable provisions of the General Order entitled "Private/Public Parking Complaints."

    C.   Members enforcing the provisions of the Municipal Code of Chicago concerning illegal parking in any space designated as a handicapped parking space ON THE PUBLIC WAY will cite violators for Chapter 27-411.2 MCC.

84-85  MU

$P_0 L$   00019

Superintendent of Police

| ADDENDUM TO: | DATE OF ISSUE | EFFECTIVE DATE | ADDENDUM NO. |
|---|---|---|---|
| General Order 84-9 | 12 September 1990 | 17 September 1990 | 2A |

| SUBJECT | DISTRI-BUTION | RESCINDS |
|---|---|---|
| HANDICAPPED PERSONS PARKING IDENTIFICATION CARDS AND HANDICAPPED PARKING DECALS OR DEVICES | B | Addendum 2 |

I.  **PURPOSE**

This addendum:

A. informs Department members of the Handicapped Persons Parking Identification Card which is authorized under the provisions of Chapter 95 1/2, Section 11-1301.2, Illinois Revised Statutes.

B. discontinues the Department's authority to issue Disabled Driver's Parking Permits (CPD-22.210) and transfers this authority to the Bureau of Parking Management.

C. introduces the use of the Handicapped Parking Decals or Devices by handicapped persons.

D. initiates a procedure in which the Bureau of Parking Management will be responsible for the issuance of a Handicapped Parking Decal or Device.

E. provides certain definitions relative to handicapped persons as set forth in the Municipal Code of Chicago and the Illinois Revised Statutes.

F. provides guidance for members enforcing the provisions of the Municipal Code of Chicago in instances occurring either on or off the public way which involve illegal parking in locations for handicapped parking.

II. **DEFINITIONS**

A. Handicapped Person (for the purpose of this addendum)

Every natural person who is unable to walk 200 feet or more unassisted by another person or without the aid of a walker, crutches, braces, prosthetic device or a wheelchair or without great difficulty or discomfort due to the following impairments: neurologic, orthopedic, respiratory, cardiac, arthritic disorder, blindness, or the loss of function or absence of a limb or limbs (reference Chapter 95 1/2, Section 1-159.1., Illinois Revised Statutes).

B. Handicapped Persons Identification Card

A card issued by the Illinois Secretary of State to a handicapped person or a not-for-profit organization that transports handicapped persons, to designate and identify a vehicle not owned by the handicapped person or displaying a handicapped or disabled veteran's license plate, to indicate when a vehicle is being used to transport handicapped person(s) and entitles that vehicle to the privileges that would be afforded a handicapped licensed vehicle (reference Chapter 95 1/2, Section 11-1301.2, Illinois Revised Statutes).

C. Handicapped Parking Decal or Device

A decal or device issued by the Bureau of Parking Management to a handicapped person authorizing that individual or a qualified operator under his express direction while the disabled person is present to park any vehicle in any space designated by signs as a handicapped parking space or in any parking stall of a private or public parking lot designated by the owner or his agent as reserved for handicapped parking.

D. Handicapped Person Parking Privileges

A motor vehicle bearing registration plates issued to a handicapped person, to a disabled veteran, or bearing a Handicapped Persons Parking Identification Card is exempt from the payment of parking meter fees and exempt from any statute or ordinance imposing time limitations on parking, except limitations of one-half hour or less, or any street or highway zone, or any parking lot or parking place which are owned, leased or owned and leased by a municipality or a municipal parking utility; but, such vehicle shall be subject to the laws which prohibit parking in "no stopping" and "no standing" zones in front of or near fire hydrants, driveways, public building entrances and exits, bus stops and loading areas, and is prohibited from parking where the motor vehicle constitutes a traffic hazard (reference Chapter 95 1/2, Section 11-1301.1, Illinois Revised Statutes).

III. **GENERAL INFORMATION**

A. Handicapped Persons Parking Identification Cards and Handicapped Parking Decals or Devices must be prominently displayed on the dashboard, windshield or visor of a vehicle. Department members are directed to be alert for these cards when performing enforcement duties.

B. The home address of the individual issued a Handicapped Persons Parking Identification Card or Handicapped Parking Decal or Device will not appear on the card (Chapter 95 1/2, Section 11-1301.2 (c), Illinois Revised Statutes.

IV. HANDICAPPED PERSONS PARKING IDENTIFICATION CARD

A. The Illinois Vehicle Code provides for the issuance of a Handicapped Persons Parking Identification Card. This card will be used to identify a vehicle which is not equipped with special Illinois handicapped persons registration plates, but which is being used to transport a handicapped person. These permits will be 8 1/2" x 5 1/2" in size and will be blue on a white background for persons with permanent disabilities and red on a white background for persons with temporary disabilities.

B. The Handicapped Persons Parking Identification Card issued by the Secretary of State may be obtained by forwarding a copy of the "Certification for Handicapped Plates or Handicapped Parking Card" application (VSD-62.4) to the Office of the Secretary of State, Non-Standard Plate Section, Room 537, Centennial Building, Springfield, Illinois 62756. There is no fee for these Parking Identification Cards, however, the application must be completed by the applicant and the physician.

V. HANDICAPPED PARKING DECALS OR DEVICES

Handicapped Parking Decals or Devices are issued by the Department of Revenue, Bureau of Parking Management, 24 East Congress Parkway, Chicago, Illinois 60605, (312)-744-BOOT, based upon the submission of an application by the handicapped person, a certification by a licensed physician of the person's handicapped status and a review/approval of the submitted documents by the Bureau of Parking Management.

VI. ENFORCEMENT GUIDELINES

A. Members enforcing the provisions of the Municipal Code of Chicago concerning illegal parking in locations designated for handicapped parking and private parking facilities and on other private property will follow the applicable provisions of the General Order entitled "Public/Private Parking Complaints."

B. Members enforcing the provisions of the Municipal Code of Chicago concerning illegal parking in any space designated as a handicapped parking space ON THE PUBLIC WAY will cite violators for Title 9-Section 64-050(c).

| Indicates new or revised item.

Superintendent of Police

88-073 RGB

| ADDENDUM TO:<br>General Order 84-9 | DATE OF ISSUE<br>28 October 1988 | EFFECTIVE DATE<br>29 October 1988 | ADDENDUM NO.<br>3 |
|---|---|---|---|

| SUBJECT<br>PHYSICAL ACCESS TO DEPARTMENT FACILITIES | DISTRI-BUTION<br>C | RESCINDS | |
|---|---|---|---|

I. **PURPOSE**

This addendum:

    A.    sets forth guidelines for the delivery of police services to handicapped/impaired persons.

    B.    outlines certain additional procedures for processing handicapped/impaired persons under Department control.

    C.    lists districts accessible to handicapped/impaired persons.

II. **GENERAL INFORMATION/GUIDELINES, NON ARREST RELATED**

    A.    When a Department facility is not accessible to a handicapped/impaired person due to physical barriers (e.g., stairs, doorways, etc.), members when possible, will refer the handicapped/impaired person to the nearest Department facility equipped to accommodate the person and deliver the required police service. When a referral is not appropriate, members will make every reasonable effort to render the necessary police service.

    B.    When there is no designated "Handicapped Parking" parking space provided, the handicapped/impaired person will be permitted to park a motor vehicle in close proximity to the Department facility. This may include the use of designated "Department Only" parking facilities for the length of time necessary to provide police services.

    C.    When sufficient prior notification is received from a handicapped/impaired person indicating a desire to attend routinely scheduled Department sponsored workshops, seminars, police-community meetings, etc., that are open to the general public, such meetings will be conducted at a facility which is equipped to accommodate the individual. In addition, when informed that hearing impaired persons will be in attendance, the procedure for providing qualified sign language interpreters outlined in the addendum to this order entitled "Sign Language Interpreters" will be followed.

III. **HANDICAPPED/IMPAIRED ARRESTEES - LOCATION OF DETENTION**

    Handicapped/impaired arrestees will be detained at a Department detention facility which can accommodate the limitations of such persons. When necessary, a watch commander in charge of a detention facility will authorize the transfer of a handicapped/impaired arrestee to an alternate, accessible Department detention facility. The transfer of such an arrestee will not relieve a district watch commander of the responsibility for the conduct of investigations requiring his personal direction (e.g., weapon discharge incidents involving sworn members, resisting arrest, interfering with a police officer, assault of a police officer, and/or battery of a police officer).

IV.  ACCESSIBLE DISTRICTS

For the purpose of this Item, "accessible" will be understood to mean barrier-free accessibility to a Department facility for mobility, hearing or visually impaired persons.  A "Yes" designation indicates that the building and its exterior facilities (including but not limited to its exterior accessible routes, parking spaces and passenger loading zones) provide the essential features relating to signs, entrances, toilet rooms, public telephones, drinking fountains, stairways/elevators, auditorium areas, etc. as presently required.

| DISTRICTS | ADDRESS | ACCESSIBLE | ALTERNATE FACILITY/ENTRY |
|---|---|---|---|
| 001 | 11 East 11th Street | No | Headquarters Entrance(s) |
| 002 | 5101 South Wentworth Avenue | No | Districts 3, 5 |
| 003 | 7040 South Cottage Grove Avenue | Yes (a)(b) | |
| 004 | 2255 East 103rd Street | Yes (a)(b) | |
| 005 | 727 East 111th Street | Yes (a)(b)(c) | |
| 006 | 819 West 85th Street | No | Districts 3, 5 |
| 007 | 6120 South Racine Avenue | No | Districts 3, 5 |
| 008 | 3515 West 63rd Street | No | Districts 3, 5 |
| 009 | 3501 South Lowe Avenue | No | Districts 3 |
| 010 | 2259 South Damen Avenue | No | District 11 |
| 011 | 3151 West Harrison Street | Yes (a)(b)(c) | |
| 012 | 100 South Racine Avenue | No | District 11 |
| 013 | 937 North Wood Street | No | District 11 |
| 014 | 2150 North California Avenue | Yes (a)(b) | |
| 015 | 5327 West Chicago Avenue | No | Districts 25, 11 |
| 016 | 5430 West Gale Street | No | District 25 |
| 017 | 4461 North Pulaski Road | No | Districts 25, 19 |
| 018 | 113 West Chicago Avenue | No | Districts 19, 11 |
| 019 | 2452 West Belmont Avenue | Yes (a)(b)(c) | |
| 020 | 1940 West Foster Avenue | No | Districts 19, 24 |
| 021 | 300 East 29th Street | No | District 3 |
| 022 | 1830 West Monterey Avenue | No | Districts 5, 4 |
| 023 | 3600 North Halsted Street | No | Districts 19, 24 |
| 024 | 6464 North Clark Street | Yes (a)(b) | |
| 025 | 5555 West Grand Avenue | Yes (a)(b)(c) | |

LEGEND

(a)  accessible to handicapped/impaired visitors
(b)  accessible to handicapped/impaired male arrestees
(c)  accessible to handicapped/impaired female arrestees.

Superintendent of Police

85-89  MU

| | GENERAL ORDER | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|---|
| | | 6 November 1987 | 7 November 1987 | 87-8 |

| SUBJECT | | DISTRI-BUTION | AMENDS |
|---|---|---|---|
| SEXUAL HARASSMENT | | C | |

| RELATED DIRECTIVES | RESCINDS |
|---|---|
| General Orders:  Integration Of The Department And Related Personnel Practices; Complaint And Disciplinary Procedures | General Order 81-9 |

I.    PURPOSE

This order:

A.    defines "sexual harassment" as outlined by the Equal Employment Opportunity Commission's (EEOC) Guidelines.

B.    defines Department policy related to sexual harassment.

C.    provides guidelines for processing complaints of sexual harassment.

II.   DEFINITION

EEOC Guidelines Volume 29, Section 1604.11 Code of Federal Regulations provides in part:  "Harassment on the basis of sex is a violation of Section 703 of Title VII.  Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, constitute sexual harassment when:

A.    submission to such conduct is made either explicitly or implicitly a term of an individual's employment.

B.    submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or

C.    such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment..."

III.  DEPARTMENT POLICY

A.    The Chicago Police Department recognizes that professionalism requires that its members treat one another with respect and dignity.  Therefore, allegations of sexual harassment between Department personnel will be promptly investigated and the findings of the investigation properly resolved.

B.    Stern disciplinary action will be taken whenever a sexual harassment complaint is sustained against a Department member.

IV.   PROCEDURES FOR PROCESSING COMPLAINTS OF SEXUAL HARASSMENT

When a sexual harassment complaint is received, a Complaint Register number will be obtained, and the provisions of the General Order entitled "Complaint and Disciplinary Procedures" will be followed.  In such cases, the Office of Professional Standards will promptly submit, via Department mail, a photocopy of the Complaint Against Department Member formset (Investigator's Copy) (CPD-44.202) to the Office of Legal Affairs, Attention: Equal Employment Opportunity Officer.

Superintendent of Police

Indicates new or revised item.

85-113  AA

ρₒ∠  00024

| | **GENERAL ORDER** | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|---|
| | | 14 April 1988 | 15 April 1988 | 88-6 |

| SUBJECT | DISTRI-BUTION | AMENDS |
|---|---|---|
| INTEGRATION OF THE DEPARTMENT AND RELATED PERSONNEL PRACTICES | C | |

| RELATED DIRECTIVES | RESCINDS |
|---|---|
| General Orders: Sexual Harassment; Personnel Transfer And Assignment Procedures; Department Grievance Procedures; Civil Rights. Department Notices: Performance Ratings-Sworn Members; Performance Ratings For Civilian Members. | General Order 81-15 |

I. PURPOSE

This order:

A. informs Department members of the responsibilities of the Affirmative Action Council, City of Chicago.

B. restates Department policy concerning equal employment opportunity, integration of assignments, conditions of employment and related personnel practices.

C. defines equal employment opportunity and affirmative action.

II. AFFIRMATIVE ACTION COUNCIL

A. The Affirmative Action Council of the City of Chicago is charged with the responsibility to oversee the implementation and monitor the compliance of all City departments and agencies with the policies and procedures established in the City of Chicago Affirmative Action Plan so as to ensure equal employment opportunity in City employment.

B. The Superintendent of Police is responsible for effecting equal employment opportunity within the Chicago Police Department.

III. POLICY

A. The Chicago Police Department will continue to provide equal employment opportunity for all Department members and candidates for employment, develop and apply employment practices which conform to the specific objectives of equal employment opportunity, and comply with affirmative action requirements in the implementation of personnel practices.

B. For the purposes of this order:

1. "Equal employment opportunity" means that employment-related decisions will be based on qualifications and anticipated performance in a given position without regard to race, color, sex, religion, national origin or political belief of a Department member or candidate for employment with the Department.

2. Age or handicapped status will be taken into account only when there is a direct relation to a job requirement.

3. "Affirmative action" is the means to:

a. effect and maintain equal employment opportunity in hiring, promotion, transfer, training and assignment practices.

b. ensure that no adverse effect in employment patterns exists.

C. Unit commanding officers will provide for racially integrated beat/sector cars or other two-police officer teams as far as available personnel permit.

D. It shall be the policy of the Department that sworn members who are related by blood or marriage will not normally be assigned to the same unit. When operational considerations necessitate the assignment of sworn members who are related by blood or marriage to the same unit, said members will be assigned to different watches or different vehicles/beats as circumstances permit. Exceptions to this policy in limited emergency circumstances are permitted upon the express approval of the unit commanding officer of exempt rank.

NOTE: Blood relations will be limited to mother, father, daughter, son, brother and sister, not including half or step.

Superintendent of Police

Indicates new or revised item.

86-057 MU

POL 00025

| **GENERAL ORDER** | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|
| | 20 April 1988 | 21 April 1988 | 88-9 |

| SUBJECT | DISTRI-BUTION | AMENDS |
|---|---|---|
| HANDLING THE PUBLIC INEBRIATE | B | |

| RELATED DIRECTIVES | RESCINDS |
|---|---|
| Alcoholism and Substance Abuse Act, Chapter 111½, IRS. General Order: Squadrol Operating Procedures. Department Special Order: Liaison With Hospitals, Detoxification Facilities and Mental Health Facilities. Department Notice: Emergency Medical Service (EMS). | General Order 81-20 |

I. PURPOSE

This order facilitates Department compliance with the Alcoholism and Substance Abuse Act, Chapter 111½, Illinois Revised Statues, Sections 6301-6325, which recognizes "the human suffering and social and economic loss caused by the illness of alcoholism, addiction to controlled substances, the use of cannabis, and the abuse and misuse of alcohol and other drugs..." This law states, "it is further the policy of this State that alcoholics and intoxicated persons engaged in public drunkenness shall not be subjected to criminal prosecution solely because of their consumption of alcoholic beverages but rather should be afforded a continuum of treatment in order that they may lead normal lives as productive members of society."

II. DEFINITIONS

For purposes of this directive:

A. "Incapacitated by alcohol" means that a person, as a result of the use of alcohol, is unconscious or otherwise exhibits by his overt behavior, or by his extreme physical debilitation, an inability to care for his own needs or recognize the obvious danger of his situation or make a rational decision with respect to his need for treatment.

B. "Intoxicated person" means a person whose mental or physical functioning is substantially impaired as a result of the use of alcohol.

C. "Detoxification facility" means a public or private treatment facility capable of providing, on site or by contractual agreement, immediate and short term emergency medical care and other treatment under this Act.

D. "Public inebriate" means a person, in a public place, who is incapacitated or intoxicated as a result of the use of alcohol.

III. PROCEDURES

A. Persons who in the professional judgment of the police officer are identified as being incapacitated by alcohol in a public place shall be taken into protective custody and immediately transported to a detoxification facility (see Addendum No. 1). If no detoxification facility is available in the district of occurrence or immediately adjacent district(s), the person shall be taken to the nearest hospital approved by the Chicago Department of Health to participate in Emergency Room Service. A list of those hospitals is contained in the addendum to the General Order entitled "Squadrol Operating Procedures."

B. Persons who in the professional judgment of the police officer are identified as being intoxicated in a public place and who may present a danger to themselves or others and who have apparently not violated a criminal law or committed an ordinance violation may, IF THEY CONSENT, be assisted to their home if it is located in the district of occurrence. They may also be assisted to a detoxification facility, a public treatment facility, a private treatment facility or other health facility, IF THEY CONSENT and such a facility is located in the district of occurrence or immediately adjacent district(s). If the person REFUSES the assistance offered, no further police action will be taken.

C. In a case wherein a person handled as a public inebriate comes under Department control, NO ARREST REPORT (CPD-11.420) will be prepared. A Miscellaneous Incident Exception Report (CPD-11.419) or a Missing/Found Person Case Report (CPD-11.407), as appropriate, will be prepared in accordance with existing reporting procedures. The treatment facility to which the person was transported, including his home, will be noted in the report.

D. Detoxification facilities and hospitals will accept these individuals on a no-decline basis. The law states that subsequent transportation be arranged by the treatment facility. Department resources will not be used for this purpose. If a treatment facility should decline to accept a patient, the officer will submit a To-From-Subject report to the Commander, Research and Development Division, citing the circumstances.

E. Sworn members who transport an individual to a facility for treatment will make every reasonable effort to protect the person's health and safety.

F. Whenever a person who is incapacitated by alcohol or intoxicated violates a criminal law or commits an ordinance violation, he will be placed under arrest and processed in accordance with existing Department procedures for processing arrested persons.

*P0L* 00026

IV. **LIABILITY**

The Act states that "No intermediary person acting in good faith and without negligence in connection with the preparation of petitions, applications, certificates or other documents for the apprehension, transportation, examination, treatment, detention or discharge or the taking into protective custody of an individual under the provisions of this Act shall incur any liability, civil or criminal by reason of these Acts." [Ill. Rev. Stat., 1985, ch. 111½, par. 6315 (g)]

V. **EFFECT OF ACT UPON OTHER LAWS**

A. "No county, municipality, or other political subdivision may adopt or enforce a local law, ordinance, resolution, or rule having the force of law that includes being intoxicated or incapacitated by alcohol as the sole basis of the offense." [Ill. Rev. Stat., 1985, ch. 111½, par. 6319 (a)]

B. "No county, municipality, or other political subdivision may interpret or apply any law of general application to circumvent the provisions of subsection a of this Section." [Ill. Rev. Stat., 1985, ch. 111½, par. 6319 (b)]

C. "Nothing in this law affects any law, ordinance, resolution, or rule against drunken driving, driving under the influence of alcohol, or other similar offense involving the operation of a vehicle, aircraft, boat, machinery, use of firearms, or other equipment, or any law regarding the sale, purchase, dispensing, possession or use of alcoholic beverages at stated times and places or by a particular class of persons, or any other provisions of the criminal laws of this State or of its subdivisions." [Ill. Rev. Stat. 1985, ch. 111½, par. 6319) (c)]

VI. **CONFIRMATION OF PATIENT CUSTODY**

A. Officers who transport public inebriates to hospitals <u>will not</u> complete the OUT-PATIENT (EMERGENCY ROOM) Cook County Confirmation of Custody form.

B. The OUT-PATIENT (EMERGENCY ROOM) Cook County Confirmation of Custody form will be completed <u>only</u> for arrestees.

VII. **DRUG ABUSE SERVICES**

The provisions of this Act relating to Drug Abuse Services treatment programs are functions of the Illinois Department of Alcoholism and Substance Abuse, the State's Attorney's Office and the courts.

Indicates new or revised item.

86-058 MU

Superintendent of Police



| ADDENDUM TO: | DATE OF ISSUE | EFFECTIVE DATE | ADDENDUM NO. |
|---|---|---|---|
| GENERAL ORDER 88-9 | 20 April 1988 | 21 April 1988 | 1 |

| SUBJECT | DISTRI-BUTION | RESCINDS |
|---|---|---|
| HANDLING THE PUBLIC INEBRIATE | | |

The following is a list of detoxification facilities which provide services for the public inebriate.

| A. | DETOXIFICATION FACILITIES | DISTRICTS SERVED |
|---|---|---|
| 1. | Aid to Alcoholics<br>5517 North Kenmore Avenue | 19, 20, 23, 24 |
| 2. | Northwestern House<br>30 West Chicago Avenue | 1, 13, 14, 18 |
| 3. | Haymarket House<br>120 North Sangamon Street | 1, 9, 10, 11, 12, 13 |
| 4. | The Woodlawn Organization (TWO)<br>1447 East 65th Street | 2, 3, 4, 6, 7, 21 |

B.   EMERGENCY MEDICAL SERVICES CUSTOMARILY USED FOR INCAPACITATED PERSONS

Those districts which are not served by a detoxification facility will transport public inebriates to the nearest hospital approved by the Department of Health to participate in the Emergency Medical Service System of the City of Chicago.

Superintendent of Police

| Indicates new or revised item.

86-058 MU

| | **GENERAL ORDER** | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|---|
| | | 18 May 1988 | 19 May 1988 | 88-12 |

| SUBJECT | DISTRI-BUTION | AMENDS |
|---|---|---|
| CIVIL RIGHTS | C | |

| RELATED DIRECTIVES | RESCINDS |
|---|---|
| General Orders: Demeanor, Courtesy, Use Of Non-Deadly Force And Protection Of Citizens' Rights; Racial, Religious, Or Nationalistic Incidents; Handicapped And Impaired Persons; Sexual Harrassment. | General Order 80-13 |

I. PURPOSE

This order continues the Department's policy to observe, uphold and enforce all laws relating to individual rights without regard to race, religion, sex, sexual preference, color, age, national ancestry, economic status or physical or mental disability.

II. DEPARTMENT POLICY

A. Every member of the Department will respect and protect each person's civil rights, and will comply with all laws and Department policy relating to civil rights.

B. When making a lawful arrest, search or seizure, Department members will use physical force authorized by law only when the exercise of persuasion, advice, and warning is found to be insufficient to obtain cooperation, and will use only the minimum degree of such physical force necessary on any occasion.

C. In addition to respect for those civil rights bestowed by law, Department members will treat all persons with complete courtesy and with the dignity inherently due every person as a human being. Department members will:

1. never show any bias or prejudice against any individual or group because of race, religion, sex, sexual preference, color, age, national ancestry, economic status or physical or mental disability.

2. act, speak, and conduct themselves as professionals.

3. never adopt a condescending attitude towards members of the public nor employ the use of derogatory terms.

4. recognize that it is their duty to serve and protect, and therefore will be courteous in all dealings with the public.

III. INDIVIDUAL RIGHTS AND THE LAW

A. The Fourth Amendment of the Constitution of the United States guarantees protection from unlawful arrest and unreasonable search and seizure to all persons in this country.

B. Under the United States Code, it is unlawful for any person who is acting under color of any law, statute, ordinance, regulation or custom to willfully subject any inhabitant of any state, territory or district to the deprivation of any rights, privileges or immunities secured or protected by the Constitution or laws of the United States or to different punishments, pains or penalties on account of such inhabitant being an alien or by reason of his color or race. Violators can be subjected to a fine and/or imprisoned for a term of years or for life (Title 18, United States Code Annotated, Section 242).

C. Along with the criminal sanctions mentioned in Item III-B, violators can be liable to the party injured in civil proceedings (Title 42, United States Code Annotated, Section 1983).

D. Denial of the full and equal enjoyment of the facilities and services of any public place of accommodation because of a person's race, color, religion, national origin, ancestry, age, sex, marital status, handicap or unfavorable discharge from military service is a violation of civil rights granted by the State of Illinois (Illinois Revised Statutes 1985, Chapter 68, Article 5).

E. All persons shall be entitled to the full and equal enjoyment of public places of accommodations and amusement in the City of Chicago (Municipal Code of Chicago, Chapter 199A).

F. No person within the City of Chicago shall discriminate against any person on account of sex in any matter concerning hiring or employment, housing, the granting or denial of credit, in any contract provision or in the provision of services (Municipal Code of Chicago, Section 199B-1).

LeRoy Martin
Superintendent of Police

|Indicates new or revised item.

85-039  JGG

| **GENERAL ORDER** | **DATE OF ISSUE** | **EFFECTIVE DATE** | **NO.** |
|---|---|---|---|
| | 9 August 1988 | 10 August 1988 | 88-16 |

| **SUBJECT** | **DISTRI-BUTION** | **AMENDS** |
|---|---|---|
| RACIAL, RELIGIOUS, OR NATIONALISTIC INCIDENTS | B | |

| **RELATED DIRECTIVES** | **RESCINDS** |
|---|---|
| General Orders:  Civil Rights; Information Report System; First Amendment Investigations.  Department Special Order:  Community Assessment Center. | General Order 83-2 |

**I.     PURPOSE**

This order:

A.  defines a racial, religious, or nationalistic incident.
B.  outlines the Department's policy in handling such incidents.
C.  continues a reporting system to ensure that police action is promptly taken.

**II.     DEFINITION**

A racial, religious, or nationalistic incident is any act, threatened or attempted, by any person or group of persons, against the person or property of another individual or group which may in any way constitute an expression of racial, religious, or nationalistic hostility.  This includes insults, jeers, signs, or any other expression of animosity or contempt which is based upon the race, religion or nationality of the object of the acts.

**III.     POLICY**

The Chicago Police Department will utilize Department resources to observe, uphold and enforce all laws protecting the rights and property of all citizens.

**IV.     REPORTING PROCEDURE**

A.  An officer who is assigned to conduct an investigation which involves any racial, religious or nationalistic incident will:

1.  request his supervisor's assistance in conducting the preliminary investigation.

2.  report the results of the preliminary investigation to the watch commander of the district in which the incident occurred.  This report will be made as soon as possible and preferably by telephone from the scene.

3.  complete and submit the appropriate case report when necessary.  A full description of the racial, religious, or nationalistic aspects of the incident will be included and a statement made in the narrative indicating the watch commander was notified.  The appropriate box on the case report will be marked "one copy to the Human Relations Section."  This section is part of the Neighborhood Relations Division, Bureau of Community Services.

B.  The watch commander in the affected district will:

1.  immediately notify the Office of the First Deputy Superintendent by telephone, giving all available information on the incident including a summary of the police action initiated.

2.  prepare an Information Report (CPD-11.461) in duplicate.  This report will contain all of the available information on the incident.  The original copy of the Information Report will then be forwarded by mail to the Office of the First Deputy Superintendent.  The duplicate (information copy) of the report will be forwarded to the district commander.

C.  An officer who encounters a racial, religious, or nationalistic incident to which he has not been assigned will immediately inform the Communication Operations Section to ensure proper assignment and reporting.

Superintendent of Police

| Indicates new or revised item.

| DEPARTMENT SPECIAL ORDER | DATE OF ISSUE 12 March 1985 | EFFECTIVE DATE 13 March 1985 | NO. 85-6 |
|---|---|---|---|

| SUBJECT DEPARTMENT OF HUMAN SERVICES, EMERGENCY SERVICES PROGRAM | DISTRI-BUTION B | AMENDS |
|---|---|---|

| RELATED DIRECTIVES General Order: Preliminary Investigations. Department Special Orders: Illinois Domestic Violence Act; Mayor's Emergency Food Program/Temporary Shelter For Senior Citizens. Department Notice: Crime Victim Compensation Act. | RESCINDS Department Special Orders: 77-23 and 80-14 |
|---|---|

## I. PURPOSE

This order informs Department members that the Department of Human Services (DHS), Emergency Services Program (ESP), provides emergency support and services in specific crime cases, i.e., murder, criminal sexual assault/abuse, robbery and aggravated assault/-battery.

## II. VICTIM/WITNESS ASSISTANCE

A. ESP personnel will provide a wide scope of supportive services to victims and/or witnesses of criminal offenses outlined in Item I of this order. These services include court advocacy, counseling, referral, and transportation.

B. Persons eligible for victim/witness assistance are:

1. bona fide crime victims/witnesses who have sustained emotional trauma, physical injury, or property loss as a result of being a victim/witness of a murder, criminal sexual assault/abuse, robbery, and aggravated assault/battery.

2. those persons affected by the commission of these offenses (i.e., family of the victim/witness).

C. Victims of criminal sexual assault/abuse may utilize the services provided by the ESP's Sexual Assault/Abuse Assistance and Prevention component.

NOTE: The DHS cannot transport juveniles. If the Youth Division or the Department of Children and Family Services (DCFS) is involved in the disposition of a service call, the DHS unit can transport family members or responsible adults to the district station or other location.

## III. PROCEDURES

A. Police officers conducting preliminary investigations of an offense listed in Item I of this order will:

1. provide for the immediate physical needs of the victim, when required.

2. if necessary, transport the victim to the closest hospital approved by the Department of Health to provide emergency room service.

3. notify other Department units that may render assistance in accordance with existing directives.

4. in criminal sexual assault/abuse cases or instances where the victim/witness is in need of, or requests, immediate social service assistance, the responding officer will notify the Communication Operations Section dispatcher to contact the Emergency Services Program, Bell 744-8418 or 744-5829.

5.   complete the appropriate case report and indicate in the narrative portion whether or not ESP was requested. In addition, in criminal sexual assault/abuse cases, they will:

    a.   when necessary, remain with the victim until the arrival of ESP personnel. (Preliminary investigators will obtain the approval of their supervising officer if it is necessary to remain longer than 15 minutes after completion of the case report.)

    b.   upon completion of the preliminary investigation, note in the report narrative and advise the Communication Operations Section dispatcher whether or not ESP personnel responded.

B.   Communication Operations Section personnel will notify the DHS Emergency Services upon the request of a police officer who is investigating an alleged criminal sexual assault/abuse case at 744-8418, or other criminal act (as specified in Item D) at 744-5829. ESP personnel may also be contacted through the direct intercom line to the Department of Streets and Sanitation.

C.   Detective Division personnel who are conducting follow-up investigations of any case involving criminal sexual assault/abuse will determine if ESP personnel responded at the time that the offense was first reported to the police. In cases where ESP did not respond, and the preliminary investigator or the victim requested that ESP be contacted, the detective will notify ESP at 744-8418 or 744-5829. The name of the ESP person notified will be included in the narrative section of the Supplementary Report (CPD-11.411).

D.   DHS participation in this program does not relieve police officers of the responsibility for notifying victims/witnesses of required court appearances.

Authenticated by: *ƒƒC*

Fred Rice
Superintendent of Police

82-49   MU

| DEPARTMENT SPECIAL ORDER | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|
| | 27 August 1985 | 28 August 1985 | 85-18 |

| SUBJECT | DISTRI-BUTION | AMENDS |
|---|---|---|
| FIRST AMENDMENT RIGHTS TO DISTRIBUTE OR SELL PRINTED MATERIAL AND TO SOLICIT FINANCIAL CONTRIBUTIONS ON THE PUBLIC WAY | B | |

| RELATED DIRECTIVES | RESCINDS |
|---|---|
| General Orders: First Amendment Investigations; Ordinance Complaint Form. | Department Special Order 79-24 |

I.  PURPOSE

This order informs members of the First Amendment right of any person, upon the public way or other public place, to:

A.  express his views through any form of communication, including distribution or sale of newspapers, magazines, handbills or other printed matter; and

B.  solicit financial contributions for political or religious causes.

II.  EXEMPTIONS

The following provisions of the Municipal Code of Chicago do not apply to persons who distribute or sell, material containing political or religious ideas on a public way or other public place:

A.  The licensing or any other provisions of Chapter 160 (Peddlers).

B.  The licensing or any other provisions of Chapter 141 (Itinerant Merchants).

C.  The geographical restriction on peddling of Chapter 36, Section 49.1 (Use of Public Ways and Places and Chapter 37 (Park, Playgrounds and Airports).

D.  The prohibition against the distribution of handbills, dodgers and other material as contained in Chapter 36, Section 28 (Distribution of Advertising Matter).

E.  The prohibition against the placing of handbills, dodgers or other material on the windshields of automobiles or the distribution of those items to occupants of automobiles as contained in Chapter 36, Section 29 (Placing Advertising Matter in Automobile).

F.  The prohibition against the solicitation of financial contributions on the public way or other public place as contained in Chapter 36 or Chapter 193, Section 1 (f) (each relating to solicitation of funds on the public ways).

III.  ENFORCEMENT

A.  No enforcement action will be taken in incidents falling within the provisions of Item II of this order.

B.  Persons expressing political or religious views on a public way or in any public place are required to comply with all laws and ordinances prohibiting physical obstruction of the movement of persons and vehicles on the public ways, noise in a zone of quiet, littering or creating a hazard on a public way or place, damage to public or private property, and any and all other applicable laws or ordinances.

C.  Enforcement of Municipal Code violations will be consistent with the provisions outlined in the General Order entitled "Ordinance Complaint Form," when applicable.

Authenticated by:

Fred Rice
Superintendent of Police

84-65 MM

Pol 00033

| DEPARTMENT SPECIAL ORDER | DATE OF ISSUE 4 February 1987 | EFFECTIVE DATE 6 February 1987 | NO. 87-1 |
|---|---|---|---|

| SUBJECT VICTIM ASSISTANCE PROGRAM | DISTRI-BUTION B | AMENDS |
|---|---|---|

| RELATED DIRECTIVES General Orders: Abused and Neglected Child Offenses; Preliminary Investigations. Departments Special Orders: Crimes Against Senior Citizens; Department Of Human Services, Emergency Services Program. Department Notice: Crime Victims Compensation Act. | RESCINDS |
|---|---|

I. PURPOSE

   A. This order informs Department members that the Victim Assistance Pilot Program previously in effect in the 6th District is being expanded City-wide.

   B. The primary functions of the Victim Assistance Program are to:

      1. ensure that victims of serious crime are informed of the community services available to them in order to reduce the impact of the trauma of victimization.

      2. attempt to induce greater cooperation from victims in both the investigative and judicial processes.

      3. improve and enhance the referral processes between the Department and community agencies which provide victim support services.

      4. implement operational procedures which are designed to increase the sensitivity of police officers to the needs of crime victims.

II. OPERATIONAL PROCEDURES, DISTRICT FIELD PERSONNEL

   A. The Victim Assistance Program will provide assistance to victims (and their families) of the following crimes:

         Murder
         Criminal Sexual Assault (includes Aggravated Criminal Sexual Assault)
         Robbery (includes both Armed and Strong Arm)
         Aggravated Assault and Battery
         Residential Burglary
         Threats and Intimidation

   B. District field personnel assigned to calls for service involving victims of any of the above listed offenses will conduct the preliminary investigation in accordance with the applicable provisions of Department directives. They will also be responsible for:

      1. providing a completed Victim Information Notice (CPD-11.380, Part 3) and explaining pertinent information to victims.

      2. communicating offers of assistance and/or information to victims.

      3. notifying the Communication Operations Section dispatcher to contact the Department of Human Services (DHS) Emergency Services via:

         a. Bell 744-8418 or 8419 for bona fide cases of Criminal Sexual Assault.

         b. Bell 744-5829 (when a request for immediate social service assistance has been made) for the following bona fide offenses:

            (1) Murder

            (2) Aggravated Assault and Battery

            (3) Robbery

      4. making referrals to the DHS at Bell 744-5829 for victims of bona fide occurrences of residential burglary, or threats and intimidation (when directed against a victim or witness involved in a previously reported offense). These referrals will be made for victims or witnesses who request or are obviously in need of immediate social service assistance. A toll free telephone number (1-800-654-8595) is also available for indigent persons.

      5. informing victims of available social service assistance, e.g.:

         a. the Illinois Crime Victim's Compensation Program (via Bell 793-2585) to determine if they qualify for monetary compensation.

         b. the nearest Beat Representative District Center, if victims need assistance in preparing an application for compensation.

      c.   the Senior Citizens' Services Division and the Youth Division for senior citizens or youth services.

    6.   indicating in the narrative of the case or supplementary report the type of referral made or suggested and the identity of the referral agency.

C.   In cases when a crime victim or witness receives threats and/or intimidation, officers will include this information in the narrative of the case or supplementary report with the name of the offender, if identified, and immediately notify the appropriate follow-up investigative unit as indicated in the directive entitled "Preliminary Investigations."

## III. COMMAND RESPONSIBILITIES, GENERAL

Command personnel identified in the Victim Assistance Program manual (the management team) will be responsible for coordinating Department operations and ensuring compliance with the procedures and program objectives set forth in the manual.

## IV. DISTRICT COMMAND AND SUPERVISORY RESPONSIBILITIES

A.   Each district commander will be responsible for the administration of this program within his district. He will receive selected weekly copies of case reports from the review officer and designate a member to conduct a telephone survey of the victim involved in each case to measure levels of satisfaction with the police service provided.

B.   District watch commanders will ensure that all personnel are familiar with this program and their respective duties, as established in this order.

C.   Field/tactical lieutenants and supervising sergeants will ensure compliance with the provisions of this order through continuous review and evaluation of their subordinates' performance and reports.

## V. PROGRAM EVALUATION

A.   The district review officer will review the subject case and supplementary reports and submit a written report each month to the district commander that indicates the number of referrals made by district field personnel by category of crime.

B.   Evaluation of levels of satisfaction will be summarized in a To-From-Subject report on a monthly basis from the district commander to the responsible area deputy chief. This report will be submitted no later than 7 days after the end of each month.

C.   The deputy chief of the area in which the crime occurred will review the evaluation summary report and maintain a file in his office. The file copies of these reports will be retained for a minimum of one year. After reviewing this report, a copy will be forwarded to the Chief of the Patrol Division for informational purposes.

Authenticated by:

                                Fred Rice
                                Superintendent of Police

86-103 MRM

| DEPARTMENT SPECIAL ORDER | DATE OF ISSUE 16 October 1987 | EFFECTIVE DATE 17 October 1987 | NO. 87-14 |
|---|---|---|---|
| **SUBJECT** ILLINOIS DOMESTIC VIOLENCE ACT | | DISTRI-BUTION B | AMENDS |
| **RELATED DIRECTIVES** Department Notices: Crime Victims Compensation Act; Time Scheduled Court Call System. | | | **RESCINDS** Department Special Order 82-6 |

I. **PURPOSE**

This order:

A. informs Department members of the pertinent provisions of the Illinois Domestic Violence Act.

B. continues procedures for reporting bona fide incidents as defined by the Act.

C. continues the use of the Domestic Crime Victim Information form (CPD-11.443).

D. includes an addendum containing pertinent statutory references and sample complaint form wording for use when citing a violation of an order of protection issued by a circuit court judge.

II. **ILLINOIS DOMESTIC VIOLENCE ACT (IRS Ch. 40, Section 2311 et seq.)**

This Act:

A. recognizes domestic violence as a serious crime that can promote a pattern of escalating violence. Victims of domestic violence are often emotionally and financially dependent on their abuser and unable to appropriately protect themselves.

B. expands the civil and criminal remedies for victims of domestic violence including, if necessary, the physical separation of the parties to prevent further abuse. The Act requires law enforcement officers to provide immediate assistance and protection to victims of domestic violence.

C. provides civil and criminal remedies for the following victims of domestic violence:

1. any person abused by a family or household member,

2. any minor child or dependent adult in the care of such person, and

3. any person residing or employed at a private home or public shelter which is housing an abused family or household member.

III. **DEFINITIONS**

For the purpose of implementing the Illinois Domestic Violence Act, the following definitions are provided:

A. "Abuse" means physical abuse, harassment, intimidation of a dependent, interference with personal liberty or wilful deprivation but does not include reasonable direction of a minor child by a parent or person in loco parentis.

B. "Family or household members" includes spouses, former spouses, parents, children, stepchildren and other persons related by blood or marriage, persons who share or formerly shared a common dwelling and persons who have or allegedly have a child in common.

C. "Order of protection" means an emergency order, interim order or plenary order, granted pursuant to this Act, which includes any or all of the remedies authorized by IRS Ch. 40, Sec. 2312-14.

IV. **DOMESTIC CRIMES**

A. Order of Protection

1. The circuit courts shall have the power to issue orders of protection.

2. All orders of protection will describe what the court has ordered the respondent to do or refrain from doing and the duration of the order.

3. An order of protection will be valid for a fixed period of time, not to exceed two (2) years.

B. Procedures

1. Whenever a member responds to a bona fide incident as defined by the Act, and the offender is on the scene, the responding member will:

a.   immediately use all reasonable means to prevent further abuse.

b.   ascertain if an order of protection has been obtained. The member will verify the existence of the order and its provisions by referring to the copy provided by the victim or by requesting the Communication Operations Section dispatcher to check the records of the Illinois Department of State Police.

c.   arrest the offender if an order of protection has been violated or other criminal offense has been committed by the offender who is still on the scene.

> NOTE: Prior to making an arrest for a violation of an order of protection, the arresting officer must ascertain if the arrestee had been served notice of the court order or had otherwise acquired knowledge of its existence.

d.   provide or arrange transportation for the victim to a medical facility for treatment of injuries or to a nearby place of shelter or safety.

e.   accompany the victim to his or her place of residence for a reasonable period of time to remove necessary personal belongings and possessions.

f.   provide the victim or responsible party acting on the victim's behalf with a copy of the Domestic Crime Victim Information form, which includes a summary, written in English and Spanish, of the victim's rights under the Act; of procedures and relief available to victims of abuse under the Act; one (1) referral to a social service agency; and the officer's name and star number.

g.   prepare a General Offense Case Report (CPD-11.380) and indicate:

   (1)   in the narrative of the report the victim's statements as to the frequency and severity of prior incidents of abuse by the same family or household member and the number of prior calls for police assistance to prevent such abuse.

   (2)   the domestic relationship of the victim and the offender in the appropriate boxes of the report (offender/victim relationship codes are printed on the front side of the report).

   > NOTE: When the incident involves a criminal offense and a violation of an order of protection, the primary and secondary classifications and the offense code will correspond to the criminal offense that has occurred. When the incident involves only a violation of an order of protection, the offense/incident classification and offense code for a violation of an order of protection as indicated in the Incident Reporting Guide (CPD-63.451) will be utilized.

2.   Whenever a member responds to a bona fide incident as defined by the Act, and the offender is not at the scene of the incident, the member will:

a.   follow the procedures outlined in Items IV-B-1-d, e, f and g.

b.   advise the victim of the importance of preserving evidence.

Authenticated by:

Fred Rice
Superintendent of Police

86-122  MU

| ADDENDUM TO: | DATE OF ISSUE | EFFECTIVE DATE | ADDENDUM NO. |
|---|---|---|---|
| Department Special Order 87-14 | 16 October 1987 | 17 October 1987 | 1 |

| SUBJECT | DISTRI-BUTION | RESCINDS |
|---|---|---|
| ILLINOIS DOMESTIC VIOLENCE ACT | B | -- |

## I. PURPOSE

This addendum:

A. provides Department members with the pertinent statutes relating to orders of protection.

B. provides a model misdemeanor complaint form to be utilized when making an arrest pursuant to IRS Ch. 38, Sect. 12-30(a).

## II. STATUTES

1. When an arrest is made pursuant to a complaint that an order of protection has been violated, the offender will usually be charged as provided in IRS Ch. 38, Sect. 12-30, Violation of Order of Protection, as follows:

   Sec. 12-30. Violation of an order of protection. (a) A person commits violation of an order of protection if he or she:

   (1) Commits an act which was prohibited by a court or fails to commit an act which was ordered by a court in violation of a remedy in a valid order of protection authorized under paragraphs (1) or (2) of subsection (b) of Ch. 40, Sect. 2312-14.

   (2) Such violation occurs after the offender has been served notice of the contents of the order, pursuant to the Illinois Domestic Violence Act, or otherwise has acquired actual knowledge of the contents of the order.

   (b) For purposes of this Section, an "order of protection" may have been issued by any circuit or associate judge in the State of Illinois in a criminal or civil proceeding.

   (c) Nothing in this Section shall be construed to diminish the inherent authority of the courts to enforce their lawful orders through civil or criminal contempt proceedings.

   (d) Violation of an order of protection under subsection (a) of this Section is a Class A misdemeanor.

2. In substance, Ch. 40, Sect. 2312-14(b) provides civil or criminal remedies for violation of either of the following subsections:

   (1) Prohibition of Abuse. Prohibit respondent's harassment, interference with personal liberty, intimidation of a dependent, physical abuse or willful deprivation, as defined in this Act, if such abuse has occurred or otherwise appears likely to occur if not prohibited.

   (2) Grant of Exclusive Possession of residence. Prohibit respondent from entering or remaining in any residence or household of the petitioner, including one owned or leased by respondent, if: (i) petitioner has a right to occupancy thereof; and (ii) if respondent also has a right to occupancy, the risk of future abuse by respondent interferes with petitioner's safe and peaceful occupancy and the balance of hardships favors possession by petitioner.

3. Persons arrested for violation of an order of protection will be scheduled for the appropriate court as provided in the Department directive entitled "Time Scheduled Court Call System."

Authenticated by:

Fred Rice
Superintendent of Police

86-122 MU